**Roberto SANCHEZ, Plaintiff-Appellee and Cross-Appellant,**

**v.**

**William SCHWARTZ and Eugene Kuffel, Defendants-Appellants and Cross-Appellees.**

**Nos. 81–2509, 81–2890, 81–2923 and 81–2926.**

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1982.

Decided Sept. 13, 1982.

John L. Conlon, Hopkins & Sutter, Chicago, Ill., for defendants-appellants and cross-appellees.

Jeffrey M. Goldberg, Chicago, Ill., for plaintiff-appellee and cross-appellant.

Before CUMMINGS, Chief Judge, DAVIS,* Associate Judge, and PELL, Circuit Judge.

CUMMINGS, Chief Judge.

In July of 1975 thirteen Chicago police officers executed simultaneous search warrants of an apartment and a social club in adjoining buildings on West Hadden Avenue in Chicago. In the course of the search, two of the officers, Eugene Kuffel and William Schwartz, handcuffed Roberto Sanchez, a Puerto Rican window-washer who happened to be visiting the apartment, to a chair. They taunted him, and Kuffel hit him in the face. Then they took him, handcuffed, to the basement of the building next door before finally releasing him with a valedictory, "No hard feelings."

Sanchez had a broken bone beneath his eye, a 5% loss of vision, medical expenses of about $2,000, and a month's lost wages as a result. He filed a Section 1983 suit in September 1978. The case was tried in bifurcated proceedings: the liability phase on April 7–10 and 13–16, 1981 and the damages phase on April 29–30, 1981. As finally presented to the jury after several amendments, it had five counts. Sanchez alleged that: Kuffel had assaulted him (Count I); Schwartz had failed to intervene (Count II); all of the policemen in the apartment, including Kuffel and Schwartz, had violated his civil rights by taking him to the neighboring basement (Count III); all of the policemen already in the basement had violated his civil rights by countenancing the basement detention (Count IV); and all of the policemen, including Kuffel and Schwartz, had participated in a cover-up (Count V). The jury found against Kuffel and Schwartz on all the counts in which they were named and for all the other defendants. The trial judge entered judgments notwithstanding the verdict on all but Counts I and II. In the damages phase of what was by now basically an assault case, the jury awarded Sanchez damages as follows: $45,000 compensatory and $5,000 punitive damages against Kuffel, who had done the actual striking, and $2,000 compensatory and $50 punitive damages against Schwartz, the bystander.

None of the liability or damages findings is at issue in this appeal. Rather this is an attorney's fee case. Although he had a

* The Honorable Oscar H. Davis, Associate Judge of the United States Court of Claims, is sitting by designation.

contingent fee contract, plaintiff's counsel asked for a statutory award of $59,815 in fees and $3,849.94 in costs.[1] The district court awarded $46,406.25 in fees and $3,849.94 in costs under 42 U.S.C. § 1988. The defendant-appellant policemen argue (a) that the award was—for various reasons—an abuse of the trial judge's discretion, and (b) that this Court should adopt a new rule reserving Section 1988 fees for cases that are not likely to involve substantial monetary recovery and hence not likely to attract competent counsel on a contingent-fee basis. The plaintiff-appellee cross-appeals the district judge's decision to deduct five hours of otherwise compensable time because of administrative delays concededly beyond the control of either party. We affirm in part, reverse in part, and remand for further fee reductions.

*The "Bright Prospects" Rule*

We begin with the pure policy argument. Suggesting that our decisions[2] (and those of the First and Fifth Circuits, which are similar[3]) invite a "wooden" application of Section 1988, the defendants here urge us to abandon our frequently reiterated view that a prevailing civil rights plaintiff is ordinarily entitled to fees as a matter of course (Br. 27–32). Instead, they suggest, we should adopt the view of the Second and Ninth Circuits[4]: if a case is likely to involve substantial monetary, rather than injunctive, relief, fees are unnecessary; a

contingent fee contract alone will attract competent counsel to the case.

■ There is some doubt that this "bright prospects" standard is still applied in the Second Circuit.[5] It has certainly had no place in the numerous attorney's fee decisions of this Court. More important, there is no indication whatsoever that it was in the mind of Congress when it enacted the Fees Awards Act (42 U.S.C. § 1988).[6] On the contrary, Congress apparently had three main aims—opening the courts to civil rights plaintiffs, penalizing obstructive litigation by civil rights defendants, and generally deterring civil rights violations—and the "bright prospects" standard at best serves only the first. See generally "Attorney's Fees in Damage Actions Under the Civil Rights Attorney's Fees Awards Act of 1976," 47 U.Chi.L.Rev. 332, 344–349 (1980). We decline to adopt the "bright prospects" standard for this Circuit.

■ We also decline to hold that where a contingent fee contract has been executed, it serves as an automatic ceiling on the amount of a statutory award.[7] Such a rule is less rigid than the all-or-nothing approach of the "bright prospects" standard, and it does not so persistently undercompensate civil rights plaintiffs. But it is equally unsupported in the legislative history.[8]

1. A condition of the statutory award was, of course, that counsel waive his contingent fee. Minute order, Aug. 11, 1981 = App. 122.

2. *E.g., Busche v. Burkee*, 649 F.2d 509 (7th Cir. 1981), certiorari denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212; *Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979).

3. *E.g., Sargeant v. Sharp*, 579 F.2d 645 (1st Cir. 1978); *Gibbs v. Frisco City, Alabama Police Dept.*, 626 F.2d 1218 (5th Cir. 1980).

4. *Zarcone v. Perry*, 581 F.2d 1039 (2d Cir. 1978), certiorari denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38; *Buxton v. Patel*, 595 F.2d 1182 (9th Cir. 1979).

5. *Wheatley v. Ford*, 679 F.2d 1037 (2d Cir. 1982); *Milwe v. Cavuoto*, 653 F.2d 80 (2d Cir. 1981). Both cases were Section 1983 damage actions against police for unlawful arrest and excessive force; in both, attorneys were award-

ed statutory fees. *Wheatley*, 679 F.2d at 1040, states the current rule as "whether a plaintiff in a similar situation would be deterred from bringing the action absent the likelihood of [a fee] award."

6. There is some indication to the contrary in the legislative history. "Under the antitrust laws, for example, a plaintiff may recover treble damages and still the court is required to award attorney fees. The same principle should apply here as civil rights plaintiffs should not be singled out for different and less favorable treatment." H.R.Rep.No.1558, 94th Cong., 2d Sess. 8–9 (1976).

7. Here such a rule would limit counsel fees to $17,350 (one-third of the $52,050 recovery).

8. Our result corresponds to the result in *Wheatley, supra*, 679 F.2d 1037, 1041. There the Second Circuit ultimately approved statuto-

*The Fees Awarded*

██ Turning to the actual award made in this case, it is reviewable only for abuse of discretion. *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir. 1981), certiorari denied, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed. 2d 854 (1982). This is a standard that accords considerable leeway to the trial judge, and properly so. He, after all, is familiar with the case and can best assess the experience and skill of the prevailing plaintiff's lawyer. However, in order to facilitate review, the district judge must make sufficient factual findings to enable the appellate court to track his decision. *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 585 (7th Cir. 1981). Here the district judge made findings on some issues but failed to discuss others. Thus he reduced the hours spent on legal research from 187 to 40, believing that even a neophyte lawyer would not need to spend more time on what was, with or without a cover-up, essentially an assault case. Memorandum Opinion, Aug. 11, 1981, p. 5 = App. 127. The parties do not contest this determination. The district judge also found that $85 per hour for office time and $125 an hour for court time was reasonable. Mem. Op. 6 = App. 128. The defendants contend that the district judge did not draw on his own knowledge of current rates, but relied solely on plaintiff's evidence (which the defendants did not controvert, although they thought it was unreasonable) (Br. 12, 13, 15). But the opinion explicitly finds the $85 office and $125 in-court rates "customary in this type of case in Chicago" (Mem. Op. 6 = App. 128). "Custom" suggests an assessment based on more than one or two instances.[9]

██ The court, however, did not perform its role as decision-maker with regard to other aspects of the fee petition. A small example is found in its acceptance of $750 as an expert witness fee for a lawyer who testified for two hours in support of plaintiff's fee petition.[10] The court allowed this extremely generous fee because "[m]uch to my surprise, the defendant introduced no evidence to show that $750 was unreasonably excessive." Mem. Op. 9 = App. 131. It should not have felt compelled to do so; the witness' information could as well have been conveyed—as is common in fee proceedings—by affidavit. There is something distinctly odd about one lawyer who testifies in support of another's fee application charging six times the $125 maximum hourly fee he is supporting.

A more important instance of judicial laissez faire is observable in the failure to reduce the number of hours expended because of four amended complaints in this case. The initial complaint was filed on September 26, 1978; it was succeeded by amended complaints on May 25, 1979; November 5, 1980; April 9, 1981; and April 13, 1981. The initial complaint named Schwartz and several Doe defendants as possible assailants. The first amendment replaced all the Doe defendants with 12 named policemen, and alleged in the alternative that each of them and Schwartz had assaulted Sanchez. The second amendment retained the 13 alternative assault counts, added a cover-up count, and amended the *ad damnum*. The third amendment named Kuffel as the assailant, Schwartz as the bystander, and retained the cover-up count. The fourth amendment incorporated the three counts of the third amendment, and added malfeasance and nonfeasance counts against all the policemen.

At oral argument the defendants stated that Sanchez had failed to appear for a line-up in 1976 and consequently could not

---

ry fees in excess of the damage award and deemed a 40% contingent fee contract satisfied thereby.

9. Defendants have directed our attention to *National Ass'n of Concerned Veterans v. Sec. of Defense*, 675 F.2d 1319 (D.C.Cir.1982), in which detailed guidelines are laid down for establishing an attorney's billing rate and prevailing rates in the community. This Circuit has pre-

scribed no such guidelines, preferring to rely on the parties' self-interest to develop accurate and full evidentiary records in fee proceedings.

10. The fee was arrived at by multiplying the expert's hourly rate ($125) by his in-court time (2 hours) and the time he spent consulting with plaintiff's counsel (4 hours). App. 121.

identify his assailant until trial. Plaintiff's counsel admitted as much but blamed the police for refusing to supply photographs for identification. He also conceded that identification and other investigation were hampered because Sanchez and several witnesses were in Puerto Rico at important stages in the pretrial period.

Admittedly, the district judge's reduction of research time cut out some of the redundant effort involved in preparing the various complaints. But it did not eliminate all the wheel-spinning—*e.g.*, filings, interrogatories, depositions, status hearings, etc.—that the amendments caused. Without indulging in metaphysical inquiries about which of the five complaints really reflect the case on which plaintiff prevailed, we think the district judge should not have saddled the defendants with fees for all plaintiff's counsel's pretrial uncertainties. An overall reduction of the claimed pretrial office hours by half would be a fair compromise. Because the reduction in research time has already gone some way toward this end, only such additional reduction as would make up the difference is indicated. Our calculations suggest the deduction of an additional 53 hours (at $85 each).

Finally, the district judge was too generous in the time allowed for preparation during the actual trial of the case. Counsel's affidavit suggests that he spent all of the week before trial preparing, and still needed another 92.5 hours of office time while the bifurcated trial was in progress. Our reduction of the pretrial preparation time (as part of the general reduction, *supra*) eliminates waste, not adequacy; and it seems excessive to add so many more hours of preparation during the trial. Again, a reduction by half is suggested, on the understanding that the trial judge has discretion to modify our figure if special circumstances—*e.g.*, unexpected developments at either trial phase—warrant.

*The Cross-Appeal*

The cross-appeal concerns the district judge's decision to award no fees for five hours of court time, owing to recesses and administrative delays that were not the fault of either party (Mem. Op. at 8 = App. 130). Plaintiff's contention is that the defendants' wrongful conduct necessitated the trial, and defendants should bear the costs of any delays therein (Br. 24). In a choice between plaintiff's but-for theory of causation and the district judge's reasoned decision we are bound to support the district judge. We do not of course require a district judge to make such fine calculations. Indeed in many trials it would be impossible to do so. But if he does make such a determination in the interests of fairness, we will not second-guess it.

### Conclusion

The plaintiff's entitlement to fees in a Section 1983 damage action is affirmed. The exclusion of in-court administrative delays, which has the effect of making each party bear his own fees for that time, is affirmed as a proper exercise of Section 1988 discretion. The case is otherwise remanded for reductions in the expert witness fee and number of compensable hours, consistent with the views expressed herein. It appears to us that the fees should be lowered by $9,200, but we leave arithmetical exactitude to the parties. Each side shall bear its own costs on appeal and neither shall be deemed to have prevailed here for purposes of additional fees under *Muscare v. Quinn*, 680 F.2d 42 (7th Cir. 1982).