719 F.2d 1496
 114 L.R.R.M. (BNA) 3667
 Daniel R. COOPER, Christopher C. Knox, Dennis J. Olonia and
Thomas W. Tillman, Plaintiffs-Appellants,
v.
Norman SINGER, Cecilia Valdez, Jake Salazar, Ramon Naranjo
and County of Rio Arriba, Defendants-Appellees.
 Nos. 81-2016, 81-2113.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 24, 1983.
 
 Joan Friedland of Friedland, Simon, Lopez, Vigil & Nelson, Santa Fe, N.M., for plaintiffs-appellants.
 John B. Pound of Montgomery & Andrews, P.A., Santa Fe, N.M., for defendants-appellees.
 Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY, LOGAN and SEYMOUR, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 The Civil Rights Attorney's Fees Awards Act of 1976[1] provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. Sec. 1988 (Supp. V 1981). We examine en banc the relationship between an attorney's fee award granted under section 1988 and a percentage contingent fee agreement between the prevailing plaintiff and his attorney.
 
 
 2
 * The four plaintiffs in this action were employed by Rio Arriba County, New Mexico as ambulance drivers. They brought a section 1983[2] suit claiming that they were illegally fired for attempting to organize a union. They obtained a judgment in federal district court for $60,000, each plaintiff receiving a $15,000 share. They then petitioned the district court for attorney's fees under section 1988. The judge denied their request, ruling that "[b]y agreeing to pay and be paid on a contingency basis, claimant and counsel have waived, in my view, any legitimate concern or necessary intervention by the Court in setting or awarding attorney's fees." Record, vol. 1, at 403.[3] The plaintiffs then appealed to the Tenth Circuit Court of Appeals. A divided panel concluded that, while the existence of a contingent fee agreement did not foreclose the possibility of an attorney's fee award under section 1988, the contingent fee agreement would set the upper limit on the amount of the fee award. 689 F.2d 929 (10th Cir.1982). Upon petition by the plaintiffs, we decided to reconsider en banc the issues raised.
 
 II
 
 3
 We find it helpful to examine the relationship between a contingent fee arrangement and a section 1988 damage award from converse perspectives. We first consider the effect of contingent fee agreements on the calculation of section 1988 fee awards. We then consider the reciprocal issue, the impact of section 1988 fee awards on attorney-client fee arrangements.
 
 
 4
 * In enacting section 1988, Congress sought to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976) (cited hereinafter as H.R. Report). As the Senate Report states,
 
 
 5
 In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.
 
 
 6
 S.Rep. No. 1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5910 (cited hereinafter as the Senate Report). In addition, Congress recognized that the civil rights litigant acts as a "private attorney general" who furthers important national policy objectives. Id. at 3, 1976 U.S.Code Cong. & Ad.News at 5910. The Senate Report states that civil rights laws "depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." Id. at 2, 1976 U.S.Code Cong. & Ad.News at 5910. See also id. at 5, 5913.
 
 
 7
 The legislative history does not discuss the impact of an attorney-client fee arrangement on a section 1988 fee award. However, the Senate does cite with approval the twelve factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974),[4] and their application in Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974), aff'd, 550 F.2d 464 (9th Cir.1977), rev'd on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); Davis v. County of Los Angeles, 8 Empl.Prac. Dec. (CCH) p 9444 (C.D.Cal.1974); and Swann v. Charlotte-Mecklenburg Board of Education, 66 F.R.D. 483 (W.D.N.C.1975). Senate Report at 6, 1976 U.S.Code Cong. & Ad.News at 5913. We therefore examine these cases.
 
 
 8
 In Johnson, the Fifth Circuit set forth guidelines for awarding attorney's fees for prevailing parties in Title VII actions.[5] It discussed incidentally the impact of attorney-client fee arrangements on attorney's fee awards. The court stated that
 
 
 9
 [t]he fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. But as we pointed out in Clark v. American Marine [320 F.Supp. 709 (E.D.La.1970) ], "[t]he statute does not prescribe the payment of fees to the lawyers. It allows the award to be made to the prevailing party. Whether or not he agreed to pay a fee and in what amount is not decisive.... Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agreed but what is reasonable." 320 F.Supp. at 711.
 
 
 10
 488 F.2d at 718. Johnson thus suggests that the essential inquiry in setting fee awards is reasonableness, regardless of any attorney-client fee arrangements. Under Johnson, a fee arrangement can be of evidentiary value; it might inform the court of the attorney's estimate of the risk of recovery or, more generally, of the market cost for legal services. However, it cannot displace the court's responsibility to determine a reasonable fee award. As an additional matter, Johnson indicates that fee awards should not provide windfalls to litigants. Johnson states that "[i]n no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed, the attorneys have contracted to an amount." 488 F.2d at 718. Johnson thus reinforces statements in the legislative history that, while attorney's fees awards are necessary to assure a "full and complete" judicial remedy for civil rights litigants, H.R. Report at 1, they should not serve as a source of undeserved enrichment, see Senate Report at 6, 1976 U.S.Code Cong. & Ad.News at 5913 (noting that fee awards should be adequate to attract competent counsel, but should not produce windfalls for attorneys).
 
 
 11
 The three cases cited in the legislative history, in varying degrees, put Johnson's principles into practice. In Stanford Daily, the district court considered, among other issues, the impact of a contingent fee agreement on an attorney's fee award. The court first calculated a base fee award, multiplying the hours worked by a reasonable billing rate. Noting the contingent fee arrangement, it then supplemented the award to reflect the uncertainty of compensation that the attorney assumed in taking the case. 64 F.R.D. at 685-86. In Davis, the court calculated an award to prevailing plaintiffs whose counsel were employed by a "public interest" law firm "in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." 8 Empl.Prac.Dec. (CCH) p 9444 at 5049. In Swann, the court found that there was no evidence of a fixed contract by the named plaintiffs for a set fee. 66 F.R.D. at 486. The court noted that "the courts have held that reasonable fees should be granted regardless of whether the individual plaintiffs were obligated to pay any fees ...." Id.
 
 
 12
 Taken together, Johnson and the three cases applying the Johnson factors provide useful but limited guidance on the relationship of a contingent fee award to a section 1988 attorney's fee award. The cases indicate that a fee award should represent a reasonable evaluation of the lawyer's actual services, and that the award may be supplemented in situations, such as contingent fee arrangements, where the attorney is not guaranteed compensation. However, the cases provide contradictory direction in assessing the precise impact of a contingent fee arrangement on a fee award. Johnson treats fee arrangements as an evidentiary factor in the calculation of a reasonable fee award, but it also can be read to prohibit fee awards that are greater than the litigant is obligated to pay. In contrast, Davis states that fees are available to clients of a public interest law firm even though the public interest lawyers receive salaries from the firm, and Swann states that reasonable fees should be granted regardless of the individual plaintiff's fee obligations.[6] Thus, the Senate Report's allusion to these cases does not give us a clear indication of congressional intent. Indeed, given the disparate dicta of Johnson and Swann, and given the inconclusive legislative history of section 1988, we are not surprised that the circuit courts have failed to obtain uniform results in determining the effect of a contingent fee agreement on an attorney's fee award.[7]
 
 
 13
 However, we believe that the Supreme Court's decision in Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), has substantially clarified the issue. In Hensley, decided after our panel opinion in the instant case, the Supreme Court held that a prevailing party's section 1988 fee award must be calculated in relation to the degree of success obtained. The Court reiterated that prevailing parties, including partially prevailing parties, are entitled to a section 1988 fee award, and that reasonableness provides the benchmark for calculating the award. However, the Court made clear that a favorable judgment alone cannot justify a given award; instead, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." --- U.S. at ----, 103 S.Ct. at 1940. In other words, the fee award must be tied to the reasonable value of the services rendered in light of the results achieved. The Supreme Court expressly relied on billing rates and time expenditures in calculating the value of the lawyer's efforts, stating:
 
 
 14
 The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.
 
 
 15
 --- U.S. at ----, 103 S.Ct. at 1939.
 
 
 16
 Hensley is helpful in resolving issues left unanswered by the legislative history. Of particular relevance to the case at hand, Hensley directs the lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful claims. The courts may then supplement this product in light of additional factors, such as the contingent nature of the lawyer's right to compensation. The end result should be an award that represents the market value of the actual services rendered. See Hensley, --- U.S. at ----, 103 S.Ct. at 1939-40 (comparing fee calculations under section 1988 to fees set in the "private" sector); Id. at ----, 103 S.Ct. at 1947 (Brennan, J., concurring and dissenting) (describing the majority's approach as the application of "market standards"). See also Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U.Pa.L.Rev. 281, 283 (1977) ("a reasonable fee ... is one that awards the attorney the market value of the time and effort justifiably expended").
 
 
 17
 Hensley provides an efficient and analytically sound approach to section 1988 attorney's fee awards.[8] The opinion contains no suggestion that a different approach should be followed in cases where the prevailing party and his attorney have executed a contingent fee agreement. Indeed, we believe that the goals of section 1988 are advanced by following the framework set forth in Hensley, regardless of the fee arrangements made by the attorney and his client.
 
 
 18
 The appellees urge us to engraft a "bright prospects" exception to Hensley's structure. The bright prospects rule was first announced in Zarcone v. Perry, 581 F.2d 1039 (2d Cir.1978), cert. denied, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), and later followed in Buxton v. Patel, 595 F.2d 1182 (9th Cir.1979). Under this rule, fees are not awarded to prevailing parties who are able to attract counsel through contingent fee agreements. The rule finds no support in the legislative history of section 1988. See Sanchez v. Schwartz, 688 F.2d 503, 505 (7th Cir.1982). Instead, it is grounded in the rationale that section 1988 is intended to secure effective representation for civil rights litigants, and that if a client can secure counsel through a traditional contingent fee agreement, he has no need for the benefits of section 1988. As noted in Sanchez, this one dimensional perspective of section 1988 ignores the other purposes of section 1988, which include penalizing obstructive litigation by civil rights defendants and generally deterring civil rights violations. Id. See also, Note, Attorney's Fees in Damage Actions Under the Civil Rights Attorney's Fees Awards Act of 1976, 47 U.Chi.L.Rev. 332, 344-49 (1980). Both of these interests are retarded by denying attorney's fees under the bright prospects rule. Beyond its impact on these specific interests, the rule creates an unwarranted exception to the general practice of awarding attorney's fees to prevailing civil rights plaintiffs. We heed the reiteration in Hensley that "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " --- U.S. at ----, 103 S.Ct. at 1937 (citing S.Rep. No. 1011, 94th Cong. 2d Sess. 4, reprinted in 1976 U.S.Code Cong. & Ad.News 5912, which in turn quotes from Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). As the majority stated in the opinion below, there is no inherent injustice in awarding attorney's fees to a prevailing party who has executed a contingent fee agreement. Cooper v. Singer, 689 F.2d 929, 931 (10th Cir.1982); see Sargeant v. Sharp, 579 F.2d 645, 649 (1st Cir.1978). Accordingly, we decline to adopt the bright prospects rule. Accord, Sanchez v. Schwartz, 688 F.2d 503, 505 (7th Cir.1982); see Wheatley v. Ford, 679 F.2d 1037, 1041 (2d Cir.1982) ("the existence of a contingency contract [by itself] is not sufficient reason to deny an award under section 1988").
 
 
 19
 It is necessary to reconsider, in light of Hensley, the previous ruling in this case that a contingent fee agreement sets an upper bound on the fee award available under section 1988. This limit was adopted to avoid excessive fee awards.[9] See Cooper, 689 F.2d at 931. However, Hensley intimates that this rigid rule is unnecessary. Excessive awards are avoided under Hensley by simply applying the "market standard" to the calculus of reasonable attorney's fees. See ante at 1500 - 1501. Prevailing parties receive an attorney's fee award calculated at the market billing rate for hours reasonably spent in advancing the successful claims, including an allowance for the contingent risks assumed by the attorney.[10] The award represents "the full value that [the attorney's] efforts would receive on the open market in non-civil-rights cases." Hensley, --- U.S. at ----, 103 S.Ct. at 1947 (Brennan, J., concurring and dissenting). Fee awards properly calculated under Hensley thus are not excessive within the meaning of section 1988; they represent the reasonable worth of the attorney's services.
 
 
 20
 Beyond providing a reasonable evaluation of a lawyer's services, the approach set forth in Hensley advances the general intendment of section 1988, providing incentives for meritorious civil rights litigation. It instructs a lawyer to critically evaluate the prospects for success in each potential civil rights claim, and it encourages the lawyer to proceed only with those claims that are indeed meritorious. The lawyer can go forward with difficult arguments, confident that the client's fee award will reflect the obstacles that the attorney overcomes. The lawyer can go forward with nonmonetary claims, secure in the knowledge that the fee award will not be diminished on account of the absence of damages.
 
 
 21
 In providing incentives for meritorious civil rights litigation, section 1988 strikes a delicate balance, encouraging civil rights litigation where success can be achieved through a reasonable expenditure of legal services. As Justice Brennan notes, "[i]f attorneys representing civil rights plaintiffs do not expect to receive full compensation for their efforts when they are successful, or if they feel they can 'lard' winning cases with additional work solely to augment their fees, the balance struck by Sec. 1988 goes awry." Hensley, --- U.S. at ----, 103 S.Ct. at 1947 (Brennan, J., concurring and dissenting). We are concerned that limitations on section 1988 fee awards, defined by the maximum amount recoverable under a contingent fee agreement, can likewise set the balance askew. Such a limitation can overemphasize the importance of damages in civil rights litigation. For example, a lawyer who undertakes an institutional reform case under a percentage contingent fee arrangement may be inclined to direct his primary efforts to proving damages, rather than advocating effective injunctive relief, because a small damage award will limit his fee. Conversely, the lawyer operating under a contingent fee who secures important injunctive relief, but fails to prevail on damages, may be severely undercompensated and deterred from accepting similar civil rights cases. Such a limitation might also encourage a lawyer to maximize the ceiling on section 1988 fee awards by increasing his share of the recovery under the contingent fee agreement. The limitation thus could both exert upward pressure on attorney's fees and reduce the opportunity for a litigant to receive full compensation for his civil rights injury. Additionally, the limitation might encourage a lawyer, when choosing among two potential contingent fee clients whose claims have an equal likelihood of success, to maximize the fee award ceiling by selecting the client whose claim has the higher damage award potential. The limitation could thus subvert section 1988's goal of opening the doors of the courtroom to all civil rights litigants who have meritorious claims. It would encourage lawyers to advance preferentially those claims that will result in the highest damage awards.
 
 
 22
 We recognize that these are possible consequences; our speculations rest on assumptions concerning the motivation of lawyers and the marketplace for legal services. Other consequences are conceivable. We, as judges, are not capable of prognosticating with certainty the actual impact of a fee award ceiling.[11] Nevertheless, we can discern a potential that a fee ceiling will produce responses from lawyers that can subvert the goals of section 1988. Accordingly, we hesitate to impose a fee ceiling, particularly when neither the statutory language nor the legislative history of section 1988 supports it. We therefore conclude that a section 1988 fee award should not be limited by a contingent fee agreement between the client and his attorney. Accord Sanchez v. Schwartz, 688 F.2d 503, 505 (7th Cir.1982). See also Fleet Investment Co. v. Rogers, 620 F.2d 792, 793 (10th Cir.1980). We instead apply the standards set forth by the Supreme Court in Hensley to all cases, regardless of any attorney-client fee arrangements. In doing so, we leave undisturbed the balance struck by Congress.[12]
 
 
 23
 At this point, however, our inquiry is but half finished. Having concluded that an attorney-client fee arrangement does not limit the client's section 1988 fee award, we must now examine the reciprocal issue: the impact of the client's fee award on the attorney-client fee arrangement.B
 
 
 24
 Both the client's section 1988 fee award and his actual fee obligation must reside within the confines of the term "reasonableness." Compare 42 U.S.C. Sec. 1988 (Supp. V 1981) ("[T]he court ... may allow the prevailing party ... a reasonable attorney's fee ....") with Model Rules of Professional Conduct Rule 1.5 (1983) ("A lawyer's fee shall be reasonable"). We find that they live together somewhat fitfully when, as in this case, the client's actual obligation is cast in terms of a percentage contingent fee. As we have discussed, the client's section 1988 fee award must be calculated on the basis of the hours reasonably expended at a reasonable billing rate. In contrast, the contingent fee is calculated as a percentage of the client's damage recovery. Viewed independently, the client's court bestowed fee award and his attorney extracted fee obligation may both be aptly described as "reasonable."[13] But because of the divergence in calculation methods, they will rarely be equivalent. We expect that this inequivalence will arise upon remand, when the district court determines the appropriate fee award. We therefore address the problem.
 
 
 25
 We are inclined to believe that Congress expected section 1988 fee awards to fulfill the client's fee obligation to his attorney. The legislative history on this issue is sparse; nevertheless, it seems to imply that the fee award should fully define the attorney's right to compensation. For example, the Senate Report states that "[i]n computing [a fee award] counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' " Senate Report at 6, 1976 U.S.Code Cong. & Ad.News at 5913. The Report thus apparently contemplates that the attorney shall receive the measure of compensation awarded to the client under section 1988, regardless of any attorney-client fee arrangement. Similarly, the Senate Report states that "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." Id. at 2, 5910. This passage again suggests that the client's fee award should fulfill his fee obligation to his attorney. Indeed, this inference accords with sensible policy in the area of civil rights litigation. If a civil rights litigant is to be fully compensated for his injuries, see Carey v. Piphus, 435 U.S. 247, 254-58, 98 S.Ct. 1042, 1047-49, 55 L.Ed.2d 252 (1978), and if windfalls to litigants and attorneys are to be avoided, see Senate Report at 6, 1976 U.S.Code Cong. & Ad.News at 5913, then a client's section 1988 attorney's fee award and his fee obligation should be the same. See Johnson v. Georgia Highway Express, 488 F.2d at 718.
 
 
 26
 Our problem lies in effectuating the congressional intent. Relying on the Supreme Court's decision in Hensley v. Eckerhart, we have refused to limit a section 1988 fee award by the terms of an attorney-client agreement. Ante at 1497-1503. We are thus faced with the reciprocal prospect: adjusting a client's contingent fee obligation to the amount received as a fee award.
 
 
 27
 We note at the outset that we approach a sensitive area. In examining a client's fee obligation, we invade the keep of the attorney-client relationship. Courts, however, have long exercised broad powers over that relationship. For example, abusive practices by lawyers in the early history of the English courts led to the court created prohibitions of champerty, maintenance and barratry. See, e.g., 4 Blackstone, Commentaries * 134-36 (1898); Radin, Maintenance by Champerty, 24 Calif.L.Rev. 48 (1935). These prohibitions on solicitation were created to respond to the contemporary problems of their era. But they reflect a more fundamental concern, the reliance of our court system on the skill, diligence and ethical conduct of the bar. As Justice Frankfurter has observed:
 
 
 28
 Certainly since the time of Edward I, through all the vicissitudes of seven centuries of Anglo-American history, the legal profession has played a role all its own. The bar has not enjoyed prerogatives; it has been entrusted with anxious responsibilities. One does not have to inhale the self-adulatory bombast of after-dinner speeches to affirm that all the interests of man that are comprised under the constitutional guarantees given to "life, liberty and property" are in the professional keeping of lawyers.
 
 
 29
 Schware v. Board of Bar Examiners, 353 U.S. 232, 247, 77 S.Ct. 752, 760, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring).
 
 
 30
 Courts can open their doors to the public, but they must rely on lawyers to guide the litigant through the passageways. In entrusting the litigant to the legal profession, courts recognize the possibility that a self-serving lawyer may ignore the best interests of the courts and his clients. Attentive to the demands of the public interest, courts retain supervisory power over the attorney-client relationship. Fees are central to that relationship, and contingent fee arrangements are therefore subject to the courts' supervision. Hoffert v. General Motors Corp., 656 F.2d 161, 165 (5th Cir.1981), cert. denied, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); Allen v. United States, 606 F.2d 432, 435-36 (4th Cir.1979); Dunn v. H.K. Porter Co., Inc., 602 F.2d 1105, 1108 (3d Cir.1979); Cappel v. Adams, 434 F.2d 1278, 1280 (5th Cir.1970). See American Trial Lawyers Ass'n v. New Jersey Supreme Court, 66 N.J. 258, 330 A.2d 350 (1974) (courts may promulgate rules regulating contingent fee arrangements); accord Gair v. Peck, 6 N.Y.2d 97, 188 N.Y.S.2d 491, 160 N.E.2d 43 (1959), appeal dismissed and cert. denied, 361 U.S. 374, 80 S.Ct. 401, 4 L.Ed.2d 380 (1960); Annot., 77 A.L.R.2d 411 (1961). See also ABA Canons of Professional Ethics, Canon 13 (1908) ("A contract for a contingent fee ... should always be subject to the supervision of a court, as to its reasonableness").
 
 
 31
 The issue then is not whether we can restrict a client's fee obligation in light of the apparent congressional intent of section 1988; rather, the issue is whether we should. While we acknowledge that ultimate authority over the legal profession is vested largely in the courts, we are nevertheless mindful of the importance of an independent and self-governing legal profession. As the Supreme Court has noted, "there is the possibility of a threat being posed to the principle of independent advocacy by having the earnings of the attorney flow from the pen of the judge before whom he argues." F.D. Rich Co. v. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). We agree with the American Bar Association's recent statement that "[a]n independent legal profession is an important force in preserving government under law, for abuse of legal authority is more readily challenged by a profession whose members are not dependent on government for the right to practice." Model Rules of Professional Conduct, Preamble (1983). But as the ABA also noted, "[t]he legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar." Id. Thus, attentive to the importance of maintaining the bar's independence, we turn first to the bar's own regulations governing the attorney-client relationship. If the bar's regulations responsibly address the issue we face, we need not intervene.
 
 
 32
 The ABA's newly enacted Model Rules of Professional Conduct provide that "[a] fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) [covering domestic relations and criminal matters] or other law." Rule 1.5. The drafters' comment explains that "[w]hen there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications." Id. at Rule 1.5 comment. The ABA's Model Code of Professional Responsibility, adopted as law in many states, likewise notes that contingent fee arrangements are often "the only practical means by which one having a claim against another can economically afford, finance and obtain the services of a competent lawyer to prosecute his claim." Model Code of Professional Responsibility EC 2-20 (1969). It provides further that "a lawyer generally should decline to accept employment on a contingent fee basis by one who is able to pay a reasonable fixed fee." Id.
 
 
 33
 As we read the bar's own rules of self-regulation, they allow contingent fee arrangements primarily when necessary to assure effective representation. Lawyers are obligated to explain the consequences of a percentage contingent fee, and explore with the client alternative means of payment. More importantly, the fee arrangement must be consistent with public policy and the client's best interests. As one commentator has noted, "[a] lawsuit is not an investment in a uranium mine in which the lawyer is a co-venturer. Rather, it is an attempt by the plaintiff to obtain redress for a legal injury." Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U.Pa.L.Rev. 281, 318 (1977). The rules of the bar contemplate that an attorney's circumspection will rise above that of an ambitious entrepreneur.
 
 
 34
 We believe that under the bar's own regulations, lawyers must take into consideration the availability of statutory fee award provisions in determining their fee arrangements with clients. In federal civil rights actions, Congress has provided that a prevailing party shall receive a reasonable attorney's fee, as determined by the courts. A lawyer should recognize that Congress apparently intended section 1988 fee awards to fully satisfy the client's fee obligations, and that a percentage contingent fee arrangement will differ in amount from a court award of reasonable fees. The lawyer's fee arrangements should reflect these factors. In the case of the client who is unable to pay under an hourly arrangement, a lawyer can contract to receive the amount that will be awarded by the court to the client under section 1988. Under this form of contingent agreement, he will thus be assured of a reasonable fee, supplemented by an appropriate contingency bonus, if his client prevails.[14] If the client's action includes claims that are not subject to the section 1988 fee award provisions, then the attorney can structure the fee agreement to provide alternate sources of payment for those claims. In any case, the lawyer can and should construct fee agreements that harmonize with the fee award provisions of Congress.
 
 
 35
 We believe that by careful adherence to the professional codes and strict attention to congressional intent, lawyers can draft fee agreements that will eliminate the conflicts between section 1988 fee awards and client fee obligations. In light of our statements, we expect that lawyers practicing before the district courts of our circuit will do so and thereby avoid the need for courts to step in and rectify conflicts on an individual basis.
 
 
 36
 In the case before us, the conflict cannot be avoided. We must offer directions on remand in the event that the court's determination of a reasonable fee award is greater than or less than the contingent fee obligation. We conclude that if the client's section 1988 fee award, calculated as set forth in Hensley v. Eckerhart and Ramos v. Lamm, is less than the amount owed to the attorney under the contingent fee agreement, then the lawyer will be expected to reduce his fee to the amount awarded by the courts. See Wheatley v. Ford, 679 F.2d 1037, 1042 (2d Cir.1982). On the other hand, if the fee award is greater than the amount owed to the attorney under the contingent fee agreement, then the attorney shall be entitled to the full amount of the fee award. Id.[15]
 
 III
 
 37
 In summary, we conclude that a prevailing plaintiff's section 1988 fee award should be calculated within the framework set forth by Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and further explained in Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983). In accordance with these cases, the existence of a contingent fee agreement between the plaintiff and his attorney shall neither prohibit the fee award nor limit its amount. We also conclude that Congress intended that the section 1988 fee award would fulfill the plaintiff's fee obligations. In the present case, the fee award determined by the district court will satisfy the client's fee obligation.
 
 
 38
 The decision of the district court is REVERSED and REMANDED.
 
 
 
 [1]
 Pub.L. No. 94-559, 90 Stat. 2641 (amending 42 U.S.C. Sec. 1988 (1866))
 
 
 [2]
 Section 1983 provides in pertinent part as follows:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. Sec. 1983 (Supp. V 1981).
 
 
 [3]
 The contingent fee agreement was memorialized in a form contract that provided in part as follows:
 RETAINER AGREEMENT
 I (We) hereby retain JOAN FRIEDLAND, MORTON S. SIMON, TONY LOPEZ, JR., and MICHAEL E. VIGIL to represent me (us) in a claim for damages against Norman Singer and the County of Rio Arriba and its commissioners and anyone else who may have been responsible for the damages caused to me arising out of our termination by the Rio Arriba County Ambulance Service.
 Should my (our) case not result in a recovery either by settlement, trial, appeal or otherwise, I (we) understand that I (we) will owe my (our) attorneys absolutely nothing for their time and legal services.
 I (We) agree to pay my (our) attorneys 33 1/3% (thirty three & one third percent) of the total amount recovered by legal action in the trial court, or by settlement or compromise either with or without legal action in the trial court, as counsel fees. I (We) understand and agree that all amounts recovered and received on my (our) behalf are to be placed by my (our) attorneys in their trust account for collection and I (we) grant my (our) attorneys a lien on my (our) cause of action or recovery therefrom for their fees and advances, expenses, and the unpaid bills, including but not limited to costs of investigation and preparation, and the like, from any recovery received by settlement, judgment or otherwise.
 Record, vol. 1, at 406. In addition, the district judge noted in his memorandum opinion that
 [w]hen counsel delivered the copy of the "Retainer Agreement" to me he informed [sic] that there was an "oral addendum" to the written agreement. The nature of the "oral addendum" is that, it is informally represented, it was agreed by counsel and his clients that any award made by the court of attorney's fees would be credited against the fee contracted for in the contingent "Retainer Agreement" on a dollar for dollar basis.
 Record, vol. 1, at 400.
 
 
 [4]
 In Johnson, the Fifth Circuit set forth the following twelve guidelines for fee awards under Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5(k) (1976): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19. These factors were derived directly from the American Bar Association's Model Code of Professional Responsibility, DR 2-106 (1969). See also Model Rules of Professional Conduct, Rule 1.5 (1983)
 
 
 [5]
 See Civil Rights Act of 1964, Sec. 706(k), 42 U.S.C. Sec. 2000e-5(k) (1976). The legislative history of Sec. 1988 indicates that Congress intended that "the standards for awarding attorney's fees be generally the same as under the fee provisions of the 1964 Civil Rights Act." Senate Report at 4, 1976 U.S.Code Cong. & Ad.News at 5912
 
 
 [6]
 Dissenting in the previous opinion in this case, Judge Holloway noted that problems arise in applying the Johnson dictum, stating as follows:
 As discussed below, however, the Fifth Circuit in later opinions has not treated the fee arrangement as a binding limit on a reasonable fee, or a bar to enhancement on consideration of other Johnson factors. E.g., Copper Liquor Inc. v. Adolph Coors Co., 624 F.2d 575, 583 n. 14 (5th Cir.). Moreover, while in Francia v. White [594 F.2d 778 (10th Cir.1979) ] we commended consideration of the Johnson factors, the Francia opinion states that not all of them need be considered. Thus it does not appear that each statement in the Johnson opinion, like that above, is binding as a strict limitation which we must follow.
 Cooper v. Singer, 689 F.2d 929, 933 n. 2 (10th Cir.1982) (Holloway, J., dissenting). On the other hand, Swann 's granting of a reasonable attorney's fee award, regardless of any attorney-client arrangement, seems to conflict with the congressional policy to avoid windfalls to litigants and their attorneys.
 
 
 [7]
 See, e.g., Pharr v. Housing Authority of Prichard, 704 F.2d 1216, 1217 (11th Cir.1983) (award limited by terms of fee contract in a Sec. 1983 action); Lenard v. Argento, 699 F.2d 874, 900 (7th Cir.1983) (fee contract does not provide an automatic ceiling on the amount of a statutory award in a civil rights action), Wheatley v. Ford, 679 F.2d 1037, 1047 (2d Cir.1982) (a contingent fee arrangement shall be deemed satisfied in full by payment of statutory award in a Sec. 1983 case); Manhart v. City of Los Angeles Dept. of Water and Power, 652 F.2d 904, 909 (9th Cir.1981) (fee award in a Title VII case cannot be deemed excessive simply because it set a higher fee than that set by the fee agreement between the union and its attorneys), vacated and remanded, --- U.S. ----, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983), (for further consideration in light of Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); Cleverly v. Western Electric Co., 594 F.2d 638, 643 (8th Cir.1979) (fee award in an age discrimination suit is not limited to amount provided by contingent fee agreement because "any fees awarded ... would certainly not exceed the [agreed upon fee]"); Sargeant v. Sharp, 579 F.2d 645, 649 (1st Cir.1978) (a fee agreement is irrelevant to the issue of entitlement and should not enter into the determination of the amount of a reasonable fee award in a civil rights action)
 
 
 [8]
 Since Hensley, we have provided an expanded explanation of the precise factors that should guide the district court in its calculation of attorney's fees, relying heavily on the Supreme Court's methodology. See Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983). In accordance with Hensley, Ramos relies on billing rates and hours expended in making the initial estimate of a reasonable fee. Id. at 552-555. The opinion then indicates factors that will result in reduction or enhancement of the fee award. Id. at 556-560. In particular, Ramos provides that a contingency bonus may be provided in cases where the lawyer, in accepting a case, agrees to receive compensation only if his client prevails. Id. at 557. As Ramos makes clear, the bonus must realistically reflect the actual risk of non-compensation that the lawyer faced. Id. at 557-558
 
 
 [9]
 In the instant case, the plaintiffs' attorneys claimed that they entered into an oral agreement with their clients granting the attorneys the fee awarded under section 1988, apparently including any excess beyond the amount of the contingent fee. See ante at 1497-1498 n. 3. Thus, it is assumed that the attorneys, rather than their clients, would receive the benefits of the excess fee award. See Cooper v. Singer, 689 F.2d 929, 931 (10th Cir.1982)
 
 
 [10]
 The Court noted that "[t]he district court also may consider other factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." --- U.S. at ----, 103 S.Ct. at 1940 n. 9
 
 
 [11]
 We note that some commentators have attempted to predict the impact of various attorneys' fees policies on litigation incentives. See, e.g., Posner, An Economic Approach to Legal Procedure and Judicial Administration, 2 J. Legal Studies 399, 439 (1973); Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif.L.Rev. 792 (1966). With regard to Judge Posner's article, Professor Dawson comments that "[t]he economic analysis of the latter author discloses the complexity of the variables that defeat any estimates framed in general terms." Dawson, Lawyers and Involuntary Clients: Attorney Fees From Funds, 87 Harv.L.Rev. 1597, 1598 n. 2 (1974)
 
 
 [12]
 The courts may, of course, look to the attorney-client fee arrangement as relevant, but non-conclusive, evidence of the value of the lawyer's services. In this regard, a percentage contingent fee arrangement may provide some indication of the attorney's estimate of the likelihood of recovery. To the extent that the contingent fee agreement is tailored to the actual risks of non-recovery faced by the lawyer, it provides helpful evidence in calculating an appropriate contingency bonus. To the extent that the contingent fee is simply a standardized charge applied to all cases accepted by the lawyer, it provides only a gross approximation of the actual risks involved in the particular case
 
 
 [13]
 We note that in describing a fee as "reasonable," the meaning changes as the context shifts. When a court calculates a "reasonable fee," it determines a specific figure that represents the court's best approximation of the value of a lawyer's services. When a court reviews the reasonableness of a fee calculated by another court, or reached by voluntary agreement, it determines whether the fee falls within a range that is neither excessive nor inadequate. See, e.g., International Travel Arrangers, Inc. v. Western Airlines, Inc., 623 F.2d 1255, 1277 (8th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). Thus, in speaking of the reasonableness of a fee, the court must ask who has primary responsibility for setting the fee in the first instance
 
 
 [14]
 We recognize that civil rights attorneys may decline to accept cases notwithstanding a guarantee of the amount that may be potentially awarded under section 1988. To the extent that these decisions reflect that the respective cases lack legal merit, the intendment of section 1988 is fulfilled--section 1988 encourages only meritorious litigation. However, if civil rights attorneys decline meritorious cases because the expected fee awards are less than the market value of their services, then the courts have failed to fulfill their obligation under section 1988 to award reasonable fees. We therefore stress again it is essential that the fee awards reflect the fair value of actual services rendered on successful claims
 
 
 [15]
 The appellant has argued that the fee award should reflect the legal services of Ms. Oppenheimer, who apparently was not entitled to compensation under the contingent fee agreement. We find the record insufficient to determine the impact of her services on the fee award and the fee obligation. We therefore direct the district court to decide these issues on remand