Clyde L. SISCO, Appellant,

v.

**J.S. ALBERICI CONSTRUCTION COMPANY, INC., Appellee.**

No. 83–1757.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1984.

Decided April 24, 1984.

Guilfoil, Petzall & Shoemake, Samuel C. Ebling, Francis G. Slay, Michael W. New-

port, St. Louis, Mo., for appellee J.S. Alberici Const. Co., Inc.

Michael J. Hoare, Chackes & Hoare, St. Louis, Mo., for appellant.

Before BRIGHT, McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Clyde L. Sisco appeals from the District Court's award of attorneys' fees of $12,000 to him as a prevailing party in his civil-rights action against J.S. Alberici Construction Co., 564 F.Supp. 765 (D.C.Mo.1983). He contends that the District Court erred in holding that the fee award should be limited to 40% of his recovery. The District Court read Sisco's contract with his lawyers to provide for a 40% contingent fee and held that the contract fixed the upper limit of fees that it could award. The Court also found that $12,000 was a reasonable fee, and Sisco appeals that determination as well. We hold that a percentage fixed in a contingent-fee contract is not an absolute ceiling on fee awards. We reverse and remand for a redetermination by the District Court of a proper fee award in this case.

### I.

In 1977, Sisco, a white ironworker, sued his employer Alberici, contending that Alberici unlawfully transferred him from a job site because of his race pursuant to an illegal affirmative-action plan, and that Alberici later terminated him and decided never to rehire him in retaliation for his complaints of racial discrimination.[1] In addition, Sisco alleged that Alberici violated his First Amendment right not to be terminated for exercising his right to free speech and his right to a due-process hearing before termination. A statement of the facts giving rise to these claims is contained in *Sisco v. J.S. Alberici Constr. Co.,* 655 F.2d 146, 147–49 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71

L.Ed.2d 688 (1982), and will not be repeated here.

The District Court denied Sisco's request for a jury trial on his claims under 42 U.S.C. § 1981 and after a court trial dismissed all of Sisco's claims. On the prior appeal to this Court, we affirmed the District Court's dismissal of the affirmative-action claim on the ground that Sisco's evidence was insufficient to present a jury question. However, we remanded the retaliation claim for trial by jury. 655 F.2d at 150. Alberici then petitioned the Supreme Court for a writ of certiorari. Sisco opposed this petition and also filed a cross-petition. The Supreme Court denied both petitions. 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982).

After extensive preparation for the second trial, the parties reached a settlement on the day scheduled for trial. The settlement agreement released Alberici from all claims that Sisco had against it in exchange for the payment of $30,000 to Sisco and his wife "as compensation for whatever emotional distress or inconvenience, if any, he and/or she experienced because of Alberici's conduct." The parties also stipulated that Sisco would be considered a prevailing party for purposes of attorneys' fees on the claim for retaliation. The parties were unable to agree as to fees and costs and thus submitted these issues to the District Court.

After holding an evidentiary hearing, the District Court found that Sisco and his counsel had entered into a contingent-fee contract including the following language:

> In the event it is necessary to go beyond the pre-trial stage, we shall attempt to recover our fee through the court from the defendant at the above rate [rate of $65.00—$75.00]. If we are unsuccessful in that regard or the amount awarded to us for fees is less than 40% of any sum awarded to you, you will pay the difference between the amount of the

---

1. We shall refer to these two claims as the "affirmative-action claim" and the "retaliation claim."

attorneys' fee award and 40% of your award.

The District Court held that the existence of this contract precluded the plaintiff from receiving an award greater than 40% of $30,000, relying on *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974), and *Cooper v. Singer*, 689 F.2d 929 (10th Cir.1982).[2] It thus limited its award of attorneys' fees to Sisco to $12,000. It also stated that this amount bore a reasonable relation to the degree of success attained by the plaintiff.

## II.

■ Sisco begins by arguing that the language quoted above from the letter agreement between him and his lawyers is not a true contingent-fee contract, but only an agreement on the extent to which he would pay additional fees in the event of an award by the court of less than 40% of the amount recovered. We assume for purposes of this appeal that the fee contract, as Alberici argues, is the equivalent of a straight 40% contingent-fee agreement, but we hold nevertheless that such a contract does not establish an inflexible ceiling on the amount of fees that can be awarded under 42 U.S.C. § 1988 or Title VII. In brief, we find persuasive the reasons advanced in the recent en banc opinion of the Tenth Circuit. *Cooper v. Singer*, 719 F.2d 1496, 1502–03 (10th Cir.1983).

First, a strict percentage limitation on fee awards, to be applied whenever the plaintiff has a contingent-fee contract with his lawyers, is not necessary to prevent excessive awards. The Supreme Court's recent opinion in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which provides that fee awards should be reduced in cases where the prevailing party loses some issues, and that courts should carefully refrain from making awards for excessive or unreasonable time spent, is adequate to accomplish this objective. See *Cooper, supra*, 719 F.2d at 1502. Further, a strict contingent-fee limit

would overemphasize the importance of the recovery of damages in civil-rights litigation. *Id.* at 1503. Under such a rule, lawyers would have a powerful incentive to direct their primary efforts to proving damages, rather than seeking effective injunctive or declaratory relief, and lawyers who received important injunctive relief but only a small money judgment for damages would be severely undercompensated. These effects would run counter to the intention of Congress to encourage successful civil-rights litigation. The fee statutes make no distinction between actions for damages and suits for equitable relief, and they should not be interpreted to create such a distinction. One of the reasons to encourage successful civil-rights litigation is that it sometimes produces significant benefits for the public at large, going well beyond the financial welfare of the named plaintiff. There should be no artificial disincentive to the seeking of such equitable relief.

We hold, in brief, that a contingent-fee contract between a client and his attorney does not automatically set an upper limit on fees that may be awarded by courts. The existence of such a contract is still a factor that can be considered, along with all other relevant factors. *Cooper v. Singer, supra*, 719 F.2d at 1503 n. 12.

## III.

■ In the alternative, Alberici argues that the District Court's award of $12,000 can be affirmed on the ground that the District Court found that amount reasonable, wholly apart from the presence in the case of a contingent-fee contract. The District Court of course has wide discretion in setting proper fee awards, and we should give that discretion every reasonable indulgence. Here, however, the District Court was apparently strongly influenced by its view that contingent-fee contracts place an automatic limit on fee awards. The Court's statement that $12,000 was a reasonable fee was not explained by any refer-

---

**2.** The Tenth Circuit en banc has since overruled this panel decision. *Cooper v. Singer,* 719 F.2d 1496 (10th Cir.1983). The District Court did not have the benefit of this en banc opinion.

ence to the number of hours reasonably expended, or to the hourly rate that the Court considered proper. In addition, it became clear at the oral argument in this Court that both parties agree that $12,000 is not sufficient to account even for those hours expended in preparation for the second trial, all of which were directed toward plaintiff's successful retaliation claim, the affirmative-action claim having by that time dropped out of the case. We thus conclude that a remand to the District Court is necessary in order that it may reconsider its award of fees in light of this opinion and *Hensley v. Eckerhart, supra.* The District Court is familiar with the lawyers, their abilities, and customary market rates, and it should make this determination in the first instance. The Court should structure its award of fees in accordance with the following factors:

1. All hours reasonably expended in preparation for the second trial should be compensated for. As we have just stated, these hours were directed exclusively towards the claim on which plaintiff has succeeded.

2. The Court should also include all hours reasonably expended by Sisco in opposing Alberici's petition for certiorari. Hours expended on Sisco's cross-petition should not be counted, since Sisco did not prevail on his cross-petition, and it was in any event unrelated to the retaliation claim.

3. The District Court should also include all hours reasonably expended by plaintiff on the retaliation issue on his first appeal to this Court. Lawyers' time spent on appealing the District Court's dismissal of the affirmative-action claim should not be counted.

4. Similarly, hours reasonably expended by counsel for plaintiff before the first appeal to this Court should be counted, to the extent that they are attributable to the retaliation claim.

5. Counsel are not entitled to be compensated for hours spent, either in the District Court or on the first appeal to this Court, in support of the claims on which Sisco has not prevailed: the affirmative-action claim, the First Amendment claim, and the due-process claim. (The latter two theories seem frivolous, since Alberici, as a nongovernmental party, is not subject to the Bill of Rights or the Fourteenth Amendment.) We recognize that the District Court may experience some difficulty in separating affirmative-action hours from retaliation hours. The two claims are based on a common core of facts, and the legal theories underlying them are not unrelated. In most cases, this kind of time separation cannot be accomplished with mathematical precision. The District Court, which is intimately familiar with the lawyers, the issues, and the facts, will simply have to use its best judgment, having in mind that one of the most important criteria to be considered is the degree of success that the plaintiff achieved in the overall litigation.

■ Sisco argues that the time spent on his affirmative-action claim should be fully counted, because this claim and the retaliation claim are so intimately related. He relies on the following passage in the Supreme Court's opinion in *Hensley, supra,* 103 S.Ct. at 1940:

Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

We do not read this passage as requiring the District Court to ignore the fact that a great deal of time was spent on unsuccessful claims, including the affirmative-action claim, merely because there is some overlap between it and the retaliation claim. Indeed, the failure of plaintiff to recover on

three of his four claims is itself a measure of his success.

Here, the overlap consists mainly in the fact that the history of what Alberici did to Sisco underlies both the affirmative-action claim and the retaliation claim. The legal underpinnings of the two theories are largely distinct. The affirmative-action claim was for the most part concerned with the particular features of Alberici's affirmative-action plan and the way it was carried out. The retaliation claim, on the other hand, focused mainly on Alberici's motive for terminating and not rehiring Sisco. It is also significant that Sisco's briefs in the District Court, filed in advance of the first appeal, mention the retaliation claim only in passing. The same is true of his brief on the first appeal to this Court. Under these circumstances, it will be proper for the District Court to exclude from its reckoning many of the hours not clearly attributable to the retaliation claim. Beyond that, it would be unwise for us to attempt more exact guidance.

The judgment is reversed and the cause remanded for further proceedings in the District Court in accordance with this opinion.[3] We hope the parties will come to an agreement and make further proceedings unnecessary. "Parties to civil rights litigation in particular should make a conscientious effort, when a fee award is to be made, to resolve any differences." *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 1550 n. 19, 79 L.Ed.2d 891 (1984).

It is so ordered.

---

**3.** Sisco also asks us to hold that prejudgment interest should be awarded to compensate his lawyers for the fact that many of their services were rendered years ago, and that the hourly rate specified in the contract may be lower than current market rates. We decline to address this question at this time. The District Court should consider it as part of the process of fixing a fee which is reasonable under all the circumstances. Whether prejudgment interest should be awarded, or inflation or fee levels taken into account in some other fashion, may depend on what the prevailing practice of lawyers and clients is in various areas of the country. If, for example, it is customary for lawyers in private practice to make an agreement with their clients for a fixed hourly rate, and to bill the client only at the conclusion of the entire case, it may be fair to assume that inflation or interest factors have already been taken into account at the time of the initial contract. The District Court, given its familiarity with the bar and the practice of law in its area, is better able to address this kind of question.