779 F.2d 1450
 39 Fair Empl.Prac.Cas. 1029,
39 Empl. Prac. Dec. P 35,895
Joe Vernon SEARS, an individual, in person, and for all
other persons similarly situated, Plaintiff-Appellee,
Albert L. Bennett, C.J. Skelton, Archie N. Jones, Forest D.
Tollett, John W. Landrum, Lawson C. Spencer, Thomas H.
White, Earlie Nash, Aubrey A. Robinson, Edward Rawlins, John
W. Cole, Charles Majors, Jr., Jesse J. Smith, Paul H.
Stewart, Jimmy E. Brown, Carl E. Chester, Ray E. Landrum,
Raymond Wiley, Eglieelgie Crow and Ellis Johnson, Criscel
Kemp, A.M. Bennett, A.L. Woolfolk, T.C. Luckey and W.W.
Seymour, the Brotherhood of Sleeping Car Porters,
Intervenors-Plaintiffs-Appellees,
Mildred Collins, Executrix of the Estate of James Collins,
Jr., Deceased, Plaintiff,
Terry G. Paup, individually and on his own behalf, Appellant,
v.
The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Defendants-Appellees,
United Transportation Union, successor to Brotherhood of
Railway Trainmen, a labor organization, Defendant.
 No. 85-1982.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 18, 1985.
 
 Donald W. Bostwick of Adams, Jones, Robinson and Malone, Wichita, Kan., for appellant.
 Harold V. Matney, Kansas City, Kan., and Lee H. Woodard of Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, Kan., and Willis L. Toney and Sammie Edwards, Kansas City, Mo., for intervenors-plaintiffs-appellees.
 Before BARRETT and LOGAN, Circuit Judges, and BALDOCK,* District Judge.
 BARRETT, Circuit Judge.
 
 
 1
 The sole issue presented by this appeal is whether the district court erred, based on the facts in this record, in applying the en banc opinion of this court in Cooper v. Singer, 719 F.2d 1496 (10th Cir.1983) retrospectively so as to abrogate contractual fee agreements entered into between appellant Terry G. Paup, the attorney (hereinafter referred to as Paup) and twenty-two (22) clients in 1972 prior to initiation of litigation which ultimately resulted in a class action recovery by some 73 class members. A recitation of the factual and litigative background should place the issue presented in focus.
 
 Background
 
 2
 Paup entered into individual written attorney/client fee agreements with twentytwo (22) members of the later certified class. The agreements provided that Paup's contingent fee would be one-third (33 1/3%) of all monetary recovery inclusive of back pay and attorney fee awards if the case should be resolved without appeal and forty percent (40%) of the total recovery obtained if appeal should be taken and the clients prevail.
 
 
 3
 Paup filed the initial suits in 1972 on behalf of Sears and Collins. These cases were consolidated and the district court certified them as a class action in August of 1975. Paup was lead counsel for the class. In 1982, following two appeals to this court and two denials of writs of certiorari to the United States Supreme Court, a judgment in favor of the plaintiff class of some $8.2 million became final. Of this sum, about $4.1 million was awarded to the 22 clients with whom Paup had contingent fee agreements.
 
 
 4
 During the pendency of the second appeal in this case, this court handed down our en banc opinion in Cooper v. Singer, supra. In order to clarify the fee entitlement, Paup filed a motion on February 4, 1985, thereafter supplemented, requesting that the district court direct payment of the judgment in accord with the 22 contingent fee contracts and that Cooper v. Singer, supra, be ruled not to apply retrospectively. Following a hearing, the district court filed its Memorandum and Order on March 12, 1985, denying Paup's motion and in pertinent part stated:
 
 
 5
 The amount of the fee awarded to Paup in 1982 [class action award] was less than the amount [by some $1.1 million] Paup would have received ... pursuant to the terms of his attorney/client fee agreement.... [T]here is a disagreement [between the parties] as to whether the rules announced in Cooper should be applied to this case. Simply stated, the Court in Cooper held "that if the ... fee award, calculated as set forth in Hensley v. Eckerhart [461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ], supra, and Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983) (on fee award) is less than the amount owed to the attorney under the contingent fee agreement, then the lawyer will be expected to reduce his fee to the amount awarded by the courts.... On the other hand, if the fee award is greater than the amount owed to the attorney under the contingent fee agreement, then the attorney shall be entitled to the full amount of the fee award." Cooper, supra, at 1506-07.
 
 
 6
 Paup contends that the Cooper rule should only be applied prospectively, citing Chevron Oil Company v. Huson, 404 U.S. 97 [92 S.Ct. 349, 30 L.Ed.2d 296] (1971), for the proposition of "nonretroactive application of judicial decisions." Plaintiffs refute this contention by arguing that Cooper should be applied in a retroactive manner because Paup has failed to demonstrat[e] the facts of this case fall into the three-part test established in Chevron Oil. On this basis, the plaintiffs argue that the "Cooper rule would require Paup to accept the Court's earlier award of attorneys fees in full satisfaction of all fees owed to him" and thus would abrogate the "fee contracts that he has with numerous class members."
 
 
 7
 In addition the 22 plaintiffs contend that Cooper is not a new policy but merely clarifies an existing policy of denying windfalls to attorneys who represent successful Civil Rights claimants.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 We have studied the briefs of the parties and find and determine:
 
 
 11
 1. That Cooper is not a statement of new law. It is a reassertion of the rule that where the law permits the assessment of fees against a party in a case, that
 
 
 12
 a) the Court may determine the amount of the reasonableness of the fee to be allowed;
 
 
 13
 b) that unless such sum allowed is inadequate or unreasonable the parties are bound by such ruling; and
 
 
 14
 c) that by seeking such a reasonable fee allowance the parties have waived any claim for the allowance of fees other than the amount as determined by the Court to be reasonable.
 
 
 15
 The Court finds and determines that the above rule complies with the intent and spirit of the Civil Rights enforced in this action.
 
 
 16
 The Court further finds that the fees allowed in this case are fair and reasonable and are in full satisfaction of all fees which have been claimed for representation of the class in this action.
 
 
 17
 The Paup motion to direct payment of the additional fees in accordance with the attorney/client fee contracts is Denied.
 
 
 18
 (R., Vol. I, pp. 268-72.)
 
 
 19
 On February 25, 1985, prior to the district court's Memorandum and Order, supra, the court conducted a hearing on Paup's motion. Although the contingent fee clients of Paup did resist the payment of fees in excess of those awarded by the court for class representation, all parties at the February 25th hearing stipulated-agreed that Paup's contingent fee contracts were reasonable both at the time they were entered into and at the time of the hearing measured by fees then charged by those engaged in the practice of law in Kansas and, further, that Paup's clients entered into the contracts freely, willingly and knowingly. (R., Vol. III, pp. 14-16.) The sole basis of the contingent fee clients' objection was that the contingent fee award was in excess of the court's class action award. (Id., pp. 16-19.)
 
 Opinion
 
 20
 There is no evidence in the record before us that the contingent fee contracts at issue were entered into other than by arms length, honest dealings. The contracts were, as represented to the trial court, entered into freely and knowingly; furthermore, the parties agreed that the contingent fees were reasonable under the prevailing rates of charges by those engaged in the practice of law in Kansas. Accordingly, we shall not, on appeal, consider for the first time contentions challenging the reasonableness of the contingent fees set forth in the contracts. Neu v. Grant, 548 F.2d 281, 287 (10th Cir.1977). Thus, the issue for our resolution is one of law.
 
 
 21
 In Cooper v. Singer, supra, we recognized, inter-alia, that: "The legislative history does not discuss the impact of an attorney-client fee arrangement on a section 1988 fee award," id. at 1498; "Johnson [Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974) ] thus suggests that the essential inquiry in setting fee awards is reasonableness, regardless of any attorney-client fee arrangements." Id. at 1499. "Taken together, Johnson and the three cases applying the Johnson factors provide useful but limited guidance on the relationship of a contingent fee award to a section 1988 attorney's fee award," and "[t]hus, the Senate Report's allusion to these cases does not give us a clear indication of congressional intent," and "we are not surprised that the circuit courts have failed to obtain uniform results in determining the effect of a contingent fee agreement on an attorney's fee award," but "we believe that the Supreme Court's decision in Hensley v. Eckerhart, [461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ], has substantially clarified the issue. In Hensley ... the Supreme Court held that a prevailing party's section 1988 fee award must be calculated in relation to the degree of success obtained.... Reasonableness provides the benchmark [focusing on the significance of the overall relief obtained in relation to the hours reasonably expended on the litigation] for calculating the award." Id. at 1500.
 
 
 22
 "We are inclined to believe that Congress expected section 1988 fee awards to fulfill the client's fee obligation to his attorney. The legislative history on this issue is sparse; nevertheless, it seems to imply that the fee award should fully define the attorney's right to compensation." Id. at 1504. "The issue then is not whether we can restrict a client's fee obligation in light of the apparent congressional intent of section 1988; rather, the issue is whether we should." Id. at 1505.
 
 
 23
 Based upon the above quotations from our Cooper en banc decision, we must respectfully disagree with the district court's finding that Cooper is not a statement of new law. The en banc opinion consistently pointed to the lack of specific, articulate Congressional guidance in the realm of legislative history, the conflicts between the circuits, and an acknowledgment that this court "should" resolve the issue whether a client's fee obligation should be restricted to less than that reflected by the contingent fee agreement. Cooper v. Singer was a statement of new law in this circuit. It announced a rule of first impression which was not foreseeable.
 
 
 24
 Assuming that Cooper v. Singer would require the reduction of the award to Paup from the agreed-to contingent fee percentages contained in the 22 contracts with his clients to the fees determined to be reasonable and allowable in the class action as found by the district court, it can only be so if held to apply retrospectively, as determined by the district court.
 
 
 25
 Applying the guidelines of Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we hold that Cooper v. Singer does not apply retrospectively.
 
 
 26
 Chevron employed a three-prong analysis in the determination whether a judicial decision should be applied retrospectively or prospectively. The Court said:
 
 
 27
 In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation omitted], or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation omitted]. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' [Citation omitted.] Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' [Citation omitted.]
 
 
 28
 404 U.S. at pp. 106-07, 92 S.Ct. at 355.
 
 
 29
 In relation to the first prong, that Cooper v. Singer did indeed announce a new rule of law deciding an issue of first impression which was not clearly foreshadowed. We are not persuaded by the argument that because the courts have always had the power to supervise contingent fee agreements and to determine their reasonableness under the canons of ethics, Cooper v. Singer does not establish a new rule of law. Our research discloses that Cooper v. Singer seems to be the only opinion holding that a fee shifting award entered by the district court under 42 U.S.C. Sec. 2000e-5(k) constitutes the only "reasonable" fee allowable to an attorney who has contracted with his client under a contingent fee agreement. In Dunn v. H.K. Porter, 602 F.2d 1105 (3rd Cir.1979), the court, while recognizing that when a contingent fee contract is to be satisfied from a settlement fund approved by the trial court pursuant to Rule 23(a), Fed.R.Civ.P., held that there is a compelling necessity to review the reasonableness of fee arrangements by examination of factors beyond the four corners of the contract in order to protect the interests of class members. Where, however, the contingent fee contract is found to meet the "reasonableness" test and was entered into between the attorney and his client (later a class action plaintiff) prior to the litigation, the court opined:
 
 
 30
 [T]he considerations stressed above argue in favor of deference to the parties' contractual arrangement. The strong judicial reluctance to enforce the terms of a judicially fashioned bargain upon the parties now presses in favor of honoring the express terms of the fee agreement. The equities are also altered. If the client has entered the contract freely and advisedly, his claim of unfairness is reduced in force. The risk of unfairness to the attorney, in contrast, is sharply increased. For it cannot be said that the attorney is receiving more than he bargained for at the outset of litigation.... We therefore believe that the courts should be loathe to intrude into a contractual relationship between an attorney and client, and that a comparison between the contractual fee and the Lindy (class action) fee, whose method of calculation is designed to meet very different needs, is an inappropriate ground for invalidation of a contingent fee arrangement. Indeed, to allow such a comparison to be the sole basis for voiding an otherwise legitimate contract would require invalidating contingent fee contracts as per se unreasonable whenever damage awards reach large amounts. This, we believe, would be inconsistent with the Canons of Ethics and relevant case law.
 
 
 31
 602 F.2d at pp. 1111-12.
 
 
 32
 Other circuit court opinions have held contra to Cooper. Thus, it cannot be said other than that Cooper announced a new rule of law deciding an issue of first impression. In Hamner v. Rios, 769 F.2d 1404 (9th Cir.1985), the court rejected our Cooper rule which limited a Sec. 1988 award to the statutory fee, relying on Pharr v. Housing Authority, 704 F.2d 1216 (11th Cir.1983) which held that when a prevailing party and his attorney have fairly contracted to reach a contingent fee, the agreement should be enforced if reasonable. The Hamner court observed, inter-alia: "Contingent fee agreements enable plaintiffs with meritorious claims but limited finances to obtain counsel, and they are set to account for the risk of nonrecovery. If attorneys begin to view statutory fees in civil rights cases as inadequate, use of the statutory award as a ceiling on fees could lead to a reluctance to represent civil rights plaintiffs, thus frustrating the intent of Congress." Hamner, 769 F.2d at 1409. In Sullivan v. Crown Paper Bd. Co., Inc., 719 F.2d 667 (3rd Cir.1983) the court held that a contingent fee agreement should be enforced even if greater than the Sec. 1988 statutory fee, and plaintiff would be directed to pay counsel the difference between the statutory award and the contingent fee. Hamner and Sullivan specifically rejected our Cooper rule.
 
 
 33
 We agree with Paup's argument that our Cooper opinion represents "a statement of future operating procedure within this circuit [rather] than an 'across-the-board' decision intended to bar the enforcement of contingent fee agreements entered into over thirteen years ago.... [T]he opinion ... anticipated what might happen on remand and set down guidelines to be applied in order to avoid what the court believed to be a possible problem if the attorneys in that case [Cooper ] were to receive both the statutory fee award and the percentage of the award provided by their contract. This is a far cry from the result in this case if this Court refuses to apply Chevron and abrogates a contingent fee contract which applies to both the client's statutory fee award and the back pay award equally." (Brief of Appellant, pp. 18, 19.)
 
 
 34
 Next, we consider the second prong of Chevron, i.e., weighing the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. In Cooper, we recognized that impact of the rule announced would require careful attention by lawyers in the future:
 
 
 35
 We believe that by careful adherence to the professional codes and strict attention to congressional intent, lawyers can draft fee agreements that will eliminate the conflicts between section 1988 fee awards and client fee obligations. In light of our statements, we expect that lawyers practicing before the district courts of our circuit will do so and thereby avoid the need for courts to step in and rectify conflicts on an individual basis.
 
 
 36
 719 F.2d at 1506. Furthermore, we recognized that judges "[a]re not capable of prognosticating with certainty the actual impact of a fee award ceiling,"id. at 1503 (footnote omitted) on civil rights litigation. Uncertainty of impact weighs heavily against retrospective application of the new rule announced in Cooper.
 
 
 37
 Finally, we consider the third prong of Chevron, i.e., whether the retroactive application of the Cooper rule will impose injustice or hardship which should be avoided. Based on the record before us, we conclude that to apply the Cooper rule retroactively would work a substantial injustice on Paup. We repeat that the contingent fee contracts were freely, willingly and knowingly entered into prior to the litigation; further, that the parties agreed that the contingent fees set forth in the contracts were fair and reasonable when entered into and currently based upon fee rates of those members of the legal profession practicing in the State of Kansas. Thus, the contingent fee percentages involved in the Paup contracts with the 22 client class members do not result in a "windfall" for Paup as cautioned in Cooper. 719 F.2d at 1499. This is so because the fee arrangement contracts provide that any statutory award of attorney's fee will be added to any other monetary award and the specified contingent fee percentages will apply to the total amount awarded. Thus, there is no "windfall." Further, in terms of reliance, there can be no doubt that contingent fee contracts such as those involved here were commonly entered into and relied upon by attorneys and their clients. Therefore, the three-prong analysis of Chevron Oil Company v. Huson leads us to hold that Cooper v. Singer should be applied prospectively.
 
 
 38
 In summary, the undisputed facts are that: the contingent fee contracts were freely and knowingly entered into between Paup and the 22 clients prior to initiation of the litigation in 1972; Paup performed excellently as lead counsel in this extremely prolonged, complex litigation; the contingent fee awards were stipulated between all parties to be reasonable both at the date of the contracts and at the date of the hearings before the district court; and the degree of success, in terms of results achieved on behalf of the plaintiffs, was overwhelming. Considering these facts, our research reveals other decisions which support our analysis in this case.
 
 
 39
 In Sargeant v. Sharp, 579 F.2d 645 (1st Cir.1978), the court held that the existence of a contingent fee arrangement was not, in itself, a special circumstance rendering an award of attorney fees unjust, and unless the court finds such circumstances, it may not deny such fees. In Farmington Dowell Products Co. v. Forster Mfg. Co., 436 F.2d 699 (1st Cir.1970), the court held that the fact that a treble damage antitrust plaintiff freely acquiesced in a fee agreement was relevant, but not absolutely controlling, in determining whether the agreed upon attorney fee was permissible under the Code of Professional Responsibility. The court pointed out that factors to be considered were the complexity of problems, quality of work, the difficulties encountered, the length of the litigation, and the results obtained in determining, under the Code, "[w]hat amount it is ethical to receive, not at what share it is ethical to agree upon." 436 F.2d at 701. And in Palmer v. Shultz, 594 F.Supp. 433 (D.D.C.1984), the court, citing to Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) ruled that in making an award of attorney fees in civil rights litigation, the focus is upon the complexity of the litigation, the skill, experience and reputation of the attorney, and the prevailing community rate for the type of work done in arriving at the "market value" which the court referred to as "the touchstone of the fee inquiry." Id. at 437.
 
 
 40
 Hensley v. Eckerhart, supra, emphasized that a Sec. 1988 fee award should be particularly calculated upon the degree of success obtained and that excellent results warrant a full compensatory fee. See also, Vinyard v. King, 728 F.2d 428 (10th Cir.1984); Miller v. City of Mission, Kansas, 705 F.2d 368 (10th Cir.1983).
 
 
 41
 When the district court entered its attorneys' fee award on December 1, 1982, neither the court nor counsel had the benefit and guidance of Hensley, supra, or Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983).
 
 
 42
 Mr. Paup pursued this complex, difficult litigation as lead counsel over a period of some thirteen years. He performed diligently and skillfully. He represented clients with limited finances. He assumed the risk of nonrecovery in prolonged, combative litigation. Under all of the circumstances, the contingent fee contracts were reasonable. The results achieved by Mr. Paup on behalf of his fee arrangement clients (and on behalf of the entire class) were overwhelmingly successful, resisted by competent counsel.
 
 
 43
 We REVERSE and REMAND with instruction that Paup be awarded attorney fees in accordance with his attorney-client contingent fee contracts.
 
 
 
 *
 The Honorable Bobby R. Baldock, United States District Judge for the District of New Mexico, sitting by designation