Stephen T. AGUINAGA, Wayne Pappan, and Janet Brown, Individually and on behalf of all other union members similarly situated, Plaintiffs,

v.

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO/CLC, Defendant.

Civ. A. No. 83–1858–T.

United States District Court,
D. Kansas.

April 24, 1992.

---

---

## OPINION AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiffs' application for attorney fees and expenses. Doc. 671. The court held an evidentiary hearing, has considered the voluminous filings, and is prepared to rule.

Plaintiffs seek an award of attorneys fees in the amount of $3,558,068.50 and expenses in the amount of $238,173.25. *See* Hearing Exhibit 3. Plaintiffs base their request on the common benefit theory. Plaintiffs calculate their fees using the lodestar approach, with an enhancement of 120% for a portion of their requested fees. The facts and the outcome of the underlying litigation have been addressed in previous opinions. The court will not repeat that discussion here.

I. Entitlement to Fees—Common Benefit Exception

A. *The American Rule*

Under the American Rule, the prevailing litigant is ordinarily not entitled to collect an attorney's fee from the loser. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Although the American Rule ordinarily precludes the allowance of attorney's fees in the absence of statutory or contractual authorization, the court may award attorney's fees when the interests of justice so re-

quire. *Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). Several exceptions to the American Rule have been recognized. The court may award attorney's fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 6, 93 S.Ct. at 1947 (citations omitted). Another exception is found in the common fund case. Attorney fees are traditionally awarded to the successful plaintiff when his action creates a common fund, the benefit of which is shared by all members of a class. *Id.* at 5 n. 7, 93 S.Ct. at 1946 n. 7. Another well-established exception involves cases where the plaintiff's litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Id.* at 5, 93 S.Ct. at 1946 (quoting *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 393–94, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970)). This exception has its origins in the common fund exception. *Id.* 412 U.S. at 5 n. 7, 93 S.Ct. at 1946 n. 7.

### B. *Common Fund*

A litigant who recovers a common fund for the benefit of persons other than himself is entitled to a reasonable attorney's fee from the fund. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.; see Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Jurisdiction over the fund allows the court to prevent unjust enrichment by assessing attorney's fees against the entire fund, spreading fees proportionately among those benefitted by the suit. *Boeing Co. v. Van Gemert,* 444 U.S. at 478, 100 S.Ct. at 749.

The criteria of the common fund exception are met when each member of a class has an undisputed and mathematically as-

certainable claim to a part of a lump-sum judgment recovered on his behalf. Once the class representative has established the defendant's liability and the total amount of damages, the members of the class may obtain their share of the recovery by proving their individual claims. *Id.* at 479, 100 S.Ct. at 749.

The common fund exception to the American Rule is not the same as the common benefit exception. *See Pawlak v. Greenawalt,* 713 F.2d 972, 981 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). Rather, the common benefit exception to the American Rule has developed well beyond the common fund theory. *Usery v. Local Union No. 639, International Brotherhood of Teamsters,* 543 F.2d 369, 382 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977). Tenth Circuit case law does not equate the common benefit exception with the common fund exception. *See Brown v. Phillips Petroleum Co.,* 838 F.2d 451 (10th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).

The Union argues that if fees are to be awarded, they should be taken out of the fund. The Union argues that the group benefitted by this litigation—the plaintiffs—should have to pay the attorney fees and costs. The Union argues that the fees should come out of the "common fund" (the judgment against the Union) and should be limited by the contingent fee contract to ⅓ of that amount.

This is not a common fund case. The named plaintiffs did not recover a fund for the benefit of every member of the class whom they represent. Not all members of the class will recover money damages. There is no fund to be divided among the plaintiffs. This lawsuit did, however, result in a common benefit, not just to all members of the plaintiff class, but to all members of the Union.

### C. *Common Benefit*

There is significant authority for awarding attorney's fees in labor law cases under the common benefit theory. *See Hall v.*

*Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Southerland v. International Longshoremen's Union Local 8,* 845 F.2d 796 (9th Cir.1987); *Pawlak v. Greenawalt,* 713 F.2d 972 (3d Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Emmanuel v. Omaha Carpenters District Council,* 560 F.2d 382 (8th Cir. 1977); *Usery v. Local Union No. 639, International Brotherhood of Teamsters,* 543 F.2d 369 (D.C.Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977); *McDonald v. Oliver,* 525 F.2d 1217 (5th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Harrison v. United Transportation Union,* 530 F.2d 558 (4th Cir.1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976).

Attorney's fees may be awarded under this exception when the plaintiff's successful litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973) (quoting *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 393–94, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970)). Before this court may award attorney's fees to the plaintiffs, the court must determine whether this litigation conferred a substantial benefit on the members of some ascertainable class.

■ If the plaintiffs did not prevail on their claim, their lawsuit would not confer any common benefit on the membership of the union. *Bygott v. Leaseway Transportation Corp.,* 637 F.Supp. 1433, 1441 (E.D.Pa.1986). In the present case, the plaintiffs prevailed against the Union on their claim against it, breach of the duty of fair representation. In conjunction with the that claim, the jury also found in favor of plaintiffs on their claim that Morrell (which had settled with plaintiffs and did not participate in the trial) breached the collective bargaining agreement.

In the present case, plaintiffs vindicated their rights of fair representation. The plaintiffs secured a common benefit by vindicating their rights, as a minority group of employees, to fair representation at the hands of the Union. The Union had intentionally sacrificed the rights of the plaintiffs to obtain benefits for another group of Union members. The right to fair representation for the minority group (plaintiffs) required that their rights and interests not be sacrificed without their knowledge merely to better the position of another group of Union members. The jury's verdict vindicated the right of the individual members of the Union to be fairly represented by the Union. The members of the Union should be able to expect that in the future, the Union will treat all members more fairly. The entire Union membership will be benefitted by the outcome of this case. In the future, all Union members can expect that the Union will investigate and pursue remedies against employers who attempt to circumvent the terms of the collective bargaining agreement or who attempt to illegally and fraudulently displace union members' jobs with nonunion workers.

The vindication of the individual right to fair representation vindicates the rights of all Union members to fair representation. This case also vindicated the right of all members to be involved in the negotiating and decisionmaking process on matters affecting their interests. The plaintiffs' victory in the present lawsuit will lessen the danger that other Union members will be treated this way in the future. Only by awarding attorney's fees to be paid from the Union treasury will the fees be spread proportionately over every Union member. Attorney's fees shall be assessed against the Union under the common benefit exception.

The Union argues that this is not a "common benefit" case. The Union argues that there are no overriding considerations justifying shifting fees to the Union membership as a whole. The Union does cite a relevant Tenth Circuit case, *Patterson v. United Brotherhood of Carpenters,* 906 F.2d 510, 515 (10th Cir.1990) (per curiam). There, the Tenth Circuit noted that:

[the common benefit] doctrine, based on the courts' inherent equitable power to award attorneys' fees when the interests of justice so require, provides that attorneys' fees may be shifted to a nonprevailing party when "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' "

*Id.* at 515 (citations omitted). The Tenth Circuit also noted that the standard of appellate review was abuse of discretion. *Id.* In the present case, the court finds that the interest of justice require the shifting of attorneys fees to the defendant Union. Contrary to the Union, the court does not read *Patterson* as requiring the court to find that the Union's position was frivolous before it may award fees under the common benefit exception. Indeed, in its one paragraph discussion of attorney fees, the Tenth Circuit did not once mention the word "frivolous." 906 F.2d at 515.

The Union argues that fee shifting in this case would not spread the costs of litigation proportionately among those actually benefitted by the suit. The Union argues that only the plaintiffs are benefitted and that the Union membership as a whole is receiving no financial benefit out of this litigation. The case law does not require, however, that the entire membership of a union be benefitted financially before attorneys fees may be awarded.

Plaintiffs based their fee application solely on the common benefit exception to the American Rule. Consequently, the court will not address entitlement to fees under other theories which the plaintiffs raised for the first time in their post-hearing brief.

II. Computation of Fees

A. *The Lodestar*

█ The Union argues that the contingent fee agreement with the class defines the upper limit on the fees that counsel may collect. The court agrees with plaintiffs that the contingent fee contract between plaintiffs and counsel does not operate to limit the recoverable amount of attorney fees. *See Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989) (an attorney fee under 42 U.S.C. § 1988 is not limited to the amount provided in a contingent fee contract between plaintiff and counsel).

In the context of the plaintiffs' contract with their attorneys, the Union's reliance on *Sears v. Atchison, T. & S.F. Ry.,* 779 F.2d 1450 (10th Cir.1985) is misplaced. The *Sears* decision involved the issue of the retroactivity of *Cooper v. Singer,* 719 F.2d 1496 (10th Cir.1983) (en banc). In *Cooper v. Singer,* the Tenth Circuit held that an attorney fee award under 42 U.S.C. § 1988 places a ceiling on an attorney's permissible recovery under a contingent fee contract. In other words, if the section 1988 fee award is less than the amount owed under the contingent fee agreement, counsel may recover only the amount awarded by the court. If the fee award is greater than the amount owed under the contingent fee agreement, the attorney is entitled to the full amount of the fee award. *Cooper,* 719 F.2d at 1506–07. *Cooper* is no longer good law in light of *Venegas v. Mitchell,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990) (attorney may collect contingent fee which exceeds statutory award under 42 U.S.C. § 1988). *Sears,* which involved the retroactive application of *Cooper,* has no applicability to the present case.

By applying what plaintiffs contend are the Wichita community rates for complex cases ($200/hour for senior partners, $150/hour for junior partners, $125/hour for associates, and $50/hour for paralegals and law clerks), the lodestar amounts are computed in the plaintiffs' memorandum (Doc. 672) and in Hearing Exhibit 3. The court will not set forth the computations here. A total of $764,888.75 for pre-Morrell settlement hours and $1,512,051.25 for post-Morrell settlement hours results.

█ The initial estimate of a reasonable attorney's fee is calculated by multiplying

the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Counsel for the prevailing party should endeavor to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939. Reasonable fees are defined by reference to the prevailing market rates in the community. *Blum v. Stenson,* 465 U.S. at 895, 104 S.Ct. at 1547.

The determination of a reasonable number of hours multiplied by a reasonable hourly rate does not end the inquiry. Other considerations may lead the district court to adjust the fee upward or downward. *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939. In making the decision to adjust a fee upward or downward, the court may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), although "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983); *see Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 566, 106 S.Ct. 3088, 3099, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*). While the *Johnson* factors may be relevant in adjusting the lodestar amount, no one factor can substitute for multiplying a reasonable rate by a reasonable estimation of the number of hours expended on the litigation. *Blanchard v. Bergeron,* 489 U.S. 87, 95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989).

■ The novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent reasons for increasing the fee award. *Blum v. Stenson,* 465 U.S. at 898–900, 104 S.Ct. at 1548–49; *see Delaware Valley I,*

478 U.S. at 565, 106 S.Ct. at 3098. The quality of counsel's representation normally is reflected in the reasonable hourly rate. Therefore, the overall quality of performance ordinarily should not be used to adjust the lodestar. *Delaware Valley I,* 478 U.S. at 566, 106 S.Ct. at 3098.

In setting fees for counsel for the prevailing party, courts regularly recognize the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect present value. *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 716, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*) (majority opinion). Compensation received several years after services were rendered is not the equivalent to the same dollar amount received promptly as the legal services are performed. *Missouri v. Jenkins,* 491 U.S. 274, 283, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989).

In *Smith v. Freeman,* 921 F.2d 1120 (10th Cir.1990), the Tenth Circuit stated:

At the outset, we note that "[t]he establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987) (quoting *Gurule v. Wilson,* 635 F.2d 782, 794 (10th Cir.1980)). The burden is on the fee applicant to establish the reasonableness of the attorney fee award under § 1988. *Lucero v. City of Trinidad,* 815 F.2d at 1385. And the district court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983). In our role as a court of review, we will overturn the district court award "only if it represents an abuse of discretion." *Mares v. Credit Bur. of Raton,* 801 F.2d 1197, 1201 (10th Cir.1986).

921 F.2d at 1122.

■ Plaintiffs discuss the following factors taken from *Johnson v. Georgia*

*Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974):

1. Time and labor involved. As of the Morrell settlement hearing in early 1987, plaintiffs' counsel had spent 5,684 hours in prosecuting the action. Since that time, counsel spent an additional 12,219.30 hours in prosecution of this case, plus an additional 527.40 hours attributed to administration of the Morrell settlement. In total, 18,-430.79 hours have been expended. Plaintiffs discuss how counsel divided their duties so as to avoid duplication of effort. Plaintiffs have broken down the number of hours spent by firm, by year, and by classification (senior partner, junior partner, associate, paralegal and clerk). Those figures are set forth in plaintiffs' memorandum (Doc. 672) and Hearing Exhibit 3 and will not be reproduced here.

2. Novelty and difficulty of the issues. Plaintiffs assert that the case involved numerous complex legal and factual issues. The court agrees that numerous complex issues were presented in this action.

3. Undesirability of the case. Plaintiffs argue that if a substantial fee is not awarded (including a fee enhancement) blue collar workers will not be able to retain competent counsel in the future.

4. Experience, reputation and ability of the attorneys. The court acknowledges the skill and competence of lead trial counsel, Messrs. Peterson and Brown. The skill and competence of other counsel, including Dengler, Abbott, Coykendall, and Linscheid, was demonstrated in the work they performed during the course of the case.

5. Skill requisite to perform the legal services properly, and the results obtained. Plaintiffs' counsel did demonstrate the necessary skill in prosecuting this action. Plaintiffs prevailed on all liability issues submitted to jury. Plaintiffs prevailed on some, but not all, damage issues. The amount of damages recovered was significant.

6. Time limitations imposed on counsel. This was a time consuming case. The case itself has been pending for nearly nine years. However, few deadlines presented themselves, except during the course of the trial itself.

7. Awards in similar cases. While plaintiffs discuss awards in other cases from this District, there really are no similar cases from this District in the recent past—i.e., class action breach of contract/breach of DFR cases.

8. Delay in receiving payment. Since the Morrell settlement in 1987, plaintiffs counsel have spent thousands of hours for which they have not been compensated and have advanced over $100,000 for expenses.

The Union challenges the reasonableness of the requested hourly rates. The Union argues that plaintiffs' counsel have made no effort to demonstrate that the hourly rates requested represent the prevailing market rate in Wichita for lawyers representing union members in DFR or similar cases. Given this argument in its response brief (Doc. 686, pp. 47–48), the court finds it odd that the Union filed a motion in limine (Doc. 700) objecting to the admission of the testimony of a prominent local attorney regarding the prevailing market rates in Wichita. The court denied the motion in limine at the hearing.

The Union has submitted an affidavit from an attorney in the Kansas City, Kansas law firm of Blake and Uhlig which represents several unions and currently charges $90 per hour. The Union argues that the fees charged by Blake and Uhlig represent the standard charges in the locality. The court must reject this argument. The court is aware that fees charged by attorneys in the Kansas City area, including Kansas City, Kansas, are comparable to billing rates charged by attorneys in Wichita. However, the Blake and Uhlig firm is not the appropriate comparison. That law firm represents unions. It does not represent plaintiffs in duty of fair representation cases against unions. The work done by this firm has not been shown to be comparable to the type of work done by the plaintiffs' counsel in this case. The court believes that the rate charged by Blake and Uhlig does not represent the appropriate hourly rate.

The Union argues that based on the number of labor consultants involved and the absence of any concrete indices of expertise in labor law matters, the rate should be reduced to reflect inexperience. The court disagrees. Counsel demonstrated a level of skill which justifies the requested hourly rates.

Given the factors discussed above and the evidence presented of prevailing rates in Wichita, the court finds that the hourly rates requested by counsel are reasonable historical hourly rates.

■ The Union also takes issue with the number of hours spent. The Union attacks several categories of hours. First, the Union claims that administration of the Morrell settlement should not be charged to the Union. The plaintiffs have claimed a total of 527.40 hours for a total fee of $41,487.50. The court finds that these matters should be charged to the Union. These hours were necessarily expended as part of the overall litigation against Morrell and the Union.

The Union then points out several entries which have not been flagged by plaintiffs as work relating to the Morrell settlement which the Union thinks did involve work relating to the Morrell settlement. This category involves 74.25 hours for a total fee of $4,912.50. The court has examined all the entries set forth by the Union in its brief. The seven entries for paralegal Wattman all relate to the damages aspect of this case and are properly charged to the Union under the category of post-Morrell settlement hours. There are three entries the Union identifies as being from attorney Brown. The entry dated 5/4/87 is in fact two entries—3.25 hours for Brown and 1.50 hours for attorney Dengler. The court has examined the entries for that day and finds that the hours are properly claimed as post-Morrell settlement hours. The two entries in December 1988 appear to relate more to the Morrell settlement aspect of this case. The hours (.50 on 12/23/88 and 2.75 on 12/30/88 for a total of 3.25 hours) should be included within the pre-Morrell settlement category of fees.

■ The Union next claims that time spent in preparation of IRS Forms 4506 should be excluded. This portion of the fee request involves 163.25 hours at cost of $8,162.50. As the Union concedes, these hours were expended in the calculation of damages. Unlike the Union, the court believes that these hours are properly chargeable to the Union. The IRS forms provided needed information regarding interim earnings for purposes of setoffs from the damage award against the Union.

■ The Union next challenges 32 hours involving work before the National Labor Relations Board (NLRB). The four entries the Union identified as attorney Brown (actually, attorneys Brown, Dengler, and Rider) identify a number of other tasks in addition to work involving the NLRB. The entry flagged by the Union for attorney Peterson consists of eight hours of trial preparation, not NLRB activity. As the record will reflect, the various activities before the NLRB figured prominently in the trial of this case. Counsel's limited involvement with the NLRB was necessary, given the fact that the Union filed an unfair labor practice charge against Morrell only after Morrell settled with the plaintiff class. The charge purported to seek relief for the plaintiff class based on the same allegations which were litigated here. The court has no reason to doubt plaintiffs' assertion that the NLRB requested the meeting. The court finds that the claimed hours are proper.

The Union next asserts that several entries have been incorrectly charged to this matter. The total amount involved in this category is $7,833.75. For at least five entries, the Union's challenge in this category constitutes the second requested deduction for the same entry. These five entries consist of one entry by paralegal Wattman dated 4/24/87 challenged above under the category Morrell settlement. Four entries under this category dated 2/8/91, 3/5/91, 3/6/91, and 3/7/91 for attorney Coykendall are also challenged under the category "Unnecessary, Unreasonable or Duplicative Hours and Expenses." For many of the entries challenged under

this heading, more than one task was performed. Having considered the thirteen items listed, the court finds as follows.

On 4/24/87, one hour shall be deducted from Wattman's time for the unspecified errand. On 4/29/87, 4/30/87 and 5/1/87, one hour shall be deducted from each billing for Peterson's time for the telephone conferences with unidentified Arkansas counsel. No deduction from Wattman's time of 8/31/87 shall be made for calls regarding insurance. The plaintiffs' medical insurance benefits were included in their damages. The 10/23/87 entry for attorney Rider must be disallowed, since he neither specified what government agency he was having a conference with nor how it related to this action. The 11/3/87 entry for attorney Schwartz shall be allowed. The four entries from Coykendall dated 2/8/91, 3/5/91, 3/6/91, and 3/7/91 shall be addressed in a later section of this opinion. Two hours shall be disallowed from Peterson's entry dated 3/29/91 for meeting with media representatives. Finally, Wattman's billing for 4/18/91 shall be allowed. While her notation, "Matters for Mr. Peterson" is not particularly specific, it appears from the context of the other billing slips for that day that she was working on the attorney fee application.

 The Union next takes issue with the alleged cursory descriptions of how the time was spent. The Union suggests that the court reduce the total number of claimed hours by 10% to account for the inadequate documentation. The Union discusses only the time spent by attorney Linscheid. Linscheid billed 532.5 hours to the case and is billed at $125 per hour. The court file will reflect that Linscheid was responsible for preparing the plaintiffs' proposed jury instructions and responding to the barrage of Union motions filed during the course of the trial itself. His descriptions of how he spent his time are sufficient. After reviewing the time sheets, the court does not believe that the requested 10% reduction is necessary.

The Union next argues that certain unnecessary, unreasonable, or duplicative hours and expenses should be excluded.

The Union has listed these matters in a separate exhibit (Exh. B to Doc. 686). The court does not intend to burden this already lengthy opinion by addressing each of the Union's 119 specific challenges item by item. The court has, however, considered each of those challenges. After reviewing the eleven page exhibit, the court finds as follows.

 Given the complex nature of the case, the participation of more than one attorney during pretrial discovery, the taking of depositions, and other trial preparation (including the tour of ACPC; the making and review of the videotape of ACPC which was played for the jury; review of depositions and expert reports; and attendance at pretrial conferences) was reasonable. The participation of paralegals during the taking of depositions and other pretrial preparation (including photographs of ACPC; taking experts to and from the airport; and participating in a mock trial) was reasonable.

The time spent by attorney Peterson in preparation for trial and meeting with the plaintiffs' expert is reasonable given the complexity of the case.

 The time spent by law clerk Debicki in the summer of 1987 appears reasonable. The time spent by law clerk Moore on research during 1987 appears reasonable. The court will disallow the 40 hours billed on 7/17/87 by Moore for attendance at a week of depositions in Chicago. Attorneys Peterson and Brown were in attendance at those depositions. It is not specified what role Moore performed as a summer law clerk or why his presence was necessary.

The Union has objected to a bill for 5.0 hours on 4/27/87 by attorney Dengler. However, as no entry appears in the time records for that attorney for that date, the court shall not deduct those hours.

 The Union has objected to the use of other attorneys from the Morris, Laing firm to read deposition testimony to the jury. The court finds this to be a reasonable means of presenting the deposition testimony in a neutral manner. One specif-

ic objection by the Union deserves mention here. The Union objected to a billing for 9.0 hours on May 4, 1988 by attorney Herr for reading deposition testimony. The Union correctly noted that no trial day lasted nine hours. However, the billing records indicate that only 1.70 hours was billed by this attorney on that date.

The Union has objected to the inclusion of 12.50 hours by attorney Dengler on 6/11/88. The description of the work performed that day is "Preparation for closing; practice run of argument; conference with co-counsel and class members regarding status." The Union's objection is based on the fact that closing argument had occurred some days prior to 6/11/88. A review of the billing records indicates that the date on the disputed entry likely should be 6/1/88. Attorney Brown lists a conference with counsel on that date. However, no other attorney billed for a conference with co-counsel on that date and Dengler failed to bill any time on 6/1/88. Thus, the court concludes that the billing is misdated. This item shall be approved.

■ All time billed regarding damage trial preparation is reasonable. The court determined that a trial was unnecessary; however, much preparation and briefing was necessary to submit the matters to the court for determination.

■ The time billed by attorney Peterson on 6/23/88 for matters involving Morrell's request to interview jurors shall be allowed. These hours were necessarily expended as part of the overall litigation against Morrell and the Union.

■ Paralegal Keplin billed 6.50 hours on 9/20/88 in searching for a pleading. The court agrees with the Union that that amount of time seems unreasonable. The court shall allow 2.00 hours for that task.

■ The court shall disallow the 3.50 hours billed by Keplin for attendance at a status conference on 10/14/88. It appears that four attorneys were present at the status conference. There is no showing that Keplin's attendance was required at the conference. The court shall allow the hours billed by attorneys Abbott and Dengler for the status conference of 10/14/88.

Likewise, the court shall disallow the 4.75 hours billed by Keplin for the 10/31/89 settlement conference. The court shall allow the time billed by attorneys Abbott and Dengler.

The court must disallow all time billed by law clerk Trouslot (2.60 hours on 6/21/90; 6.30 hours on 6/22/90; 8.20 hours on 6/25/90; 7.90 hours on 6/26/90; 7.30 hours on 6/27/90; and 4.50 hours on 6.28/90). The explanation of how these hours were spent is insufficient to justify the number of hours.

■ All time billed by attorneys and paralegals on appeal matters shall not be allowed. The court agrees with the Union that any claim for attorneys fees on appeal is premature.

The court may have failed to address specifically some of the Union's objections to specific time entries. The court has considered all objections and has rejected all objections except as noted herein.

The Union next argues that the requested fee should be reduced by 10% because this portion of the fee is to be paid to the law firm of Bruckner & Sykes for unspecified consulting services. The Union questions whether the fee splitting arrangement is ethical. Be that as it may, the court must reject the Union's challenge. What plaintiffs' counsel intend to do with their fees once they receive them is not germane to the computation of a reasonable fee.

B. *Multiplier*

Plaintiffs seek a multiplier of 120% for all hours spent after the Morrell settlement to account for the delay in payment, the results obtained and the quality of representation, and the contingent nature of the work. Taking the pre-settlement lodestar less the Morrell fee award and adding the post-settlement lodestar plus the enhancement of 120% results in a total fee request of $3,558,068.50.

Plaintiffs' reasons for an enhancement are as follows. Plaintiffs argue that the

delay factor justifies a .3 multiplier because counsels' hourly rates have not increased since 1987. Plaintiffs assert that the contingent nature of the case justifies a .3 multiplier, since plaintiffs prevail against their unions in so few DFR cases (approximately 1%). Plaintiffs state that the court is in the best position to determine whether a .6 multiplier for the quality of representation is justified.

The Union argues that there is no basis for a fee enhancement in this case. The Union argues that this case was not complex, that the delay in payment does not justify an enhancement because the use of current rates compensates for inflation and interest, that an enhancement for the contingent nature of the case is not justified, and that an enhancement based on quality of representation is justified only in rare cases. Without denigrating their competence, the Union argues that plaintiffs' counsel have not demonstrated a justification for a multiplier. The Union also notes that while the plaintiffs' counsel did achieve a good result for their clients, the result was not exceptional.

The Union cites *Smith v. Freeman*, 921 F.2d 1120, 1123 (10th Cir.1990) for the proposition that a contingency enhancement may be made only in exceptional cases and that risk of loss is an insufficient basis for an enhancement. Doc. 710 at p. 2 and n. 2. In *Smith v. Freeman*, the Tenth Circuit recognized that a delay in payment may be the basis for an adjustment in the attorney fee award. 921 F.2d at 1122. The court stated, "To deny an attorney compensation for delay in payment in cases where *the time involved in conscientious representation has been great and the litigation has been protracted* would plainly run contrary to the purposes underlying" the attorney fee statute. *Id.* at 1123 (emphasis added). The court ruled, however, that the few months between filing and settlement were insufficient to require an increase in the lodestar to compensate for the delay in payment. *Id.* The Tenth Circuit next held that an "enhancement for risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 729, 107 S.Ct. 3078, 3088, 97 L.Ed.2d 585 (1987)).

Given the lengthy delays in bringing this case to judgment, the court believes that a multiplier of 25% is appropriate. The time involved in this litigation was indeed great. The litigation has been protracted. This case is the oldest matter on the court's docket. This is indeed one of the rare or exceptional cases in which an upward adjustment is warranted for delay. Plaintiffs' counsel are entitled to an enhancement of the requested historical rates to compensate them for the lengthy delay in payment.

## C. *Expenses*

Plaintiffs seek a total of $238,173.25 for their costs and expenses, including the usual expenses for photocopies, telephone, postage, transcripts, and so on, along with their expert witness fees.

The court may tax expert witness fees in excess of the $30 per day witness fee only when the witness is court-appointed. 28 U.S.C. §§ 1821, 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); *Miller v. Cudahy Co.*, 858 F.2d 1449, 1461 (10th Cir.1988), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). Likewise, the court believes that plaintiffs' expert witness fees and expenses may not be shifted to the defendants as a part of the attorney fee award.

The Union next claims that it has already paid plaintiffs' counsel $4,590.38 for copying fees and that this amount should be excluded from this category of expenses. Plaintiffs have responded that this amount was billed directly to the Union and is not included within their request for expenses. The court shall accept plaintiffs' representation in the absence of any proof to the contrary.

The Union asserts that certain lunch and dinner expenses should be excluded. Expenses for lunches and dinners incurred during the course of the trial shall be allowed.

 The Union argues that $225.74 of the Smith, Shay expenses involved the purchase of supplies and should be considered part of the normal overhead of the firm. Plaintiffs have provided no explanation or justification for these expenses. Without some showing that these expenses were necessarily incurred in the litigation of this case, they shall not be allowed.

The Union asserts that fees paid to several law firms for professional services should be disallowed since there is no information as to the reason for these charges or their reasonableness. In response, the plaintiffs have deducted the payment of $2,200.00 to the Fleeson, Gooing firm. The court has examined the other charges and finds them to be reasonable.

The Union next argues that the costs associated with the administration of the Morrell settlement should be excluded. The court disagrees for the same reason as given above in the context of the attorneys fees incurred in administering the Morrell settlement.

The Union next takes issue with a number of trial expenses, ranging from moving files to the courthouse, to parking, lunches and dinners, and class representative's travel expenses. The court finds these expenses to be reasonable.

The Union argues that certain expenses were unnecessary and/or duplicative. Since the court has disallowed the time billed by law clerk Moore for attendance at depositions in Chicago, the court shall also disallow his travel and hotel expenses. The expenses for paralegal Wattman are approved.

The Union argues that expenses relating to NLRB activity and the preparation and filing of IRS Forms 4506 should be disallowed. The court disagrees for the same reason as given above in the context of the attorneys fees incurred in the same activities.

IT IS BY THE COURT THEREFORE ORDERED that plaintiffs' application for attorneys' fees (Doc. 671) is hereby granted in part and denied in part as provided in this opinion and order. Counsel for plaintiffs shall submit an appropriate journal entry calculating the fees and expenses in accordance with the court's rulings herein within ten days of the date of this opinion and order.

IT IS FURTHER ORDERED that defendant's motion in limine to exclude market rate evidence (Doc. 700) is hereby denied.